4753.   SAVANNAH ELECTRIC COMPANY v. LACKENS.

1. A judgment overruling a motion for a new trial will not be reversed merely because in the order the trial judge recites: "So two juries have found on the facts in favor of the plaintiff, and I would not be justified in granting this motion unless there has been an error of law committed by the court against the defendant." The proper construction of such an order is that, in view of the fact that the verdict complained of was the second concurrent verdict upon conflicting evidence, and the discretion of the trial judge was not as broad as it would have been had the first verdict been under review, he did not feel that he ought to interfere with the jury's finding.

2. The evidence was not such as to require an instruction that the plaintiff would not be entitled to recover, if, by the exercise of ordinary care, she could have avoided the consequence of the defendant's negligence. The proximate cause of the plaintiff's injury was the sudden jerk of the car from which she was attempting to alight, and the consequence of this negligence could not have been avoided after it became existent and operative.

3. Construed in the light of the entire charge, there was no error in any of the instructions of which complaint is made in the motion for a new trial.

4. The evidence authorized the verdict.

DECIDED JUNE 10, 1913.

Action for damages; from city court of Savannah—Judge Davis Freeman. January 25, 1913.

*Osborne & Lawrence*, for plaintiff in error.

*Anderson, Cann & Cann*, contra.

POTTLE, J.   The plaintiff, who was a passenger on the defendant's railway, has twice recovered for personal injuries alleged to have been caused by the defendant's negligence. The trial judge set aside the first verdict, and, upon the hearing of the second motion for a new trial, passed the following order: "This case has been twice tried—two verdicts, one for $5,000 and one for $6,192, being rendered for plaintiff. On the second trial, in addition to the witnesses testifying on the first trial, Mrs. Smith and Mrs. Schloss testified for defendant. So two juries have found on the facts in favor of plaintiff, and I would not be justified in granting this motion unless there has been an error of law committed by the court against the defendant. I do not think there is any reversible error complained of against the defendant, and the motion is therefore overruled and a new trial denied."

The petition contained two counts. The first count charged negligence in not giving the plaintiff sufficient time to alight from the

street-railway car after it had been stopped for that purpose, and in starting the car while the plaintiff was in the act of alighting therefrom. The second count need not further be referred to, since it is not relied on for a recovery and there was no evidence in support thereof. The defendant filed no special defense, but contented itself with a general denial of all material averments, including the allegation that the plaintiff was free from fault.

1. Where there have been two concurrent verdicts in favor of a party litigant, the second grant of a new trial "on account of alleged conflict between the evidence and the verdict will be closely examined to see that the discretion of the court below has been justly and wisely exercised in view of the peculiar issues and facts in each case and having due regard to the general consideration of the fitness of juries to ascertain the facts, and the necessity that there must be some end to litigation." *Vassie* v. *Central Ry. Co.,* 135 *Ga.* 8 (68 S. E. 782) ; *Stewart* v. *Central Ry. Co.,* 3 *Ga. App.* 397 (60 S. E. 1). In the case last cited, a number of the decisions of the Supreme Court are referred to, from which the rule seems to be deducible, that where the evidence decidedly preponderates in favor of the verdict, a second new trial should not be granted. In the case then under consideration this court followed the rule announced by the Supreme Court in *Taylor* v. *Central Railroad Co.,* 79 *Ga.* 330 (55 S. E. 114), to the effect that the power of the courts to grant new trials is not limited as to the number of times it may be exercised, "but the presumption of the legality of such grant weakens upon each concurrent verdict." It must be admitted that the rule denying to the trial judge the right to grant a second new trial upon conflicting evidence where the evidence decidedly preponderates in favor of the verdict is not altogether satisfactory. The preponderance of the evidence is not always with the greater number of witnesses, and it is frequently doubtful where the legal preponderance lies. There may be one witness known to the jury and judge to be a man of absolute integrity and impartiality, and, in their opinion, the testimony of this witness might properly outweigh that of a dozen witnesses, whose testimony might not, on account of interest, or bias, or friendship for one of the parties, or on account of the knowledge the judge or the jury might have of their character, be entitled to as much weight as that of the one witness upon whose testimony the verdict was based. These are

some of the considerations which give sanctity to the jury's finding
after it has met the approval of the trial judge. Frequently, from
the printed record, the preponderance of the evidence seems to be
against the verdict, and sometimes it is actually so, but the review-
ing court is not in as good position to determine where the pre-
ponderance lies as is the judge who has presided during the trial,
seen the witnesses, noted their manner of testifying, and has felt
the force of that indefinable something which can only be derived
from the atmosphere of the trial. Sometimes truth can be felt
when it can not be seen; and the trial judge is in a much better
position than the appellate court to feel its influence and recognize
its presence. While, under the law of this State, the line between
the duty of the trial judge and that of the jury is clearly marked,
and their functions are separate and distinct—the duty of the judge
being confined to instructing the jury in the principles of law ap-
plicable to the case and in policing the trial to see that no element
of unfairness enters into it, and that of the jury being to find the
facts and apply the principles of law as given them in charge by
the court,—still the judge is given the power to veto the jury's
finding of the facts, and such finding will not be approved by the
reviewing court unless it has received the express or implied sanction
of the trial judge; and this would seem to apply without reference
to the number of concurrent verdicts of the jury, although we are
not called on now to decide whether or not the veto power of the
judge might be lost after a number of concurrent verdicts have been
returned in favor of the same party. But the sanction of the
verdict by the trial judge need not be express; it is to be implied
from his failure to disapprove, evidenced by the overruling of the
motion to set aside the verdict. Whenever a motion for a new trial
is overruled by the presiding judge, there is a presumption that
the verdict has met with his approval; because it is his duty, when
considering the motion, to pass upon the facts; and this court is
bound to presume that he has performed this duty, unless the con-
trary affirmatively appears. Hence, it follows that he who asserts
that the trial judge has failed to exercise the discretion imposed
upon him by law, and which the law imperatively requires him to
exercise, must bring clear and unmistakable proof of that fact. If,
in passing upon the motion for a new trial, the trial judge asserts
in his order that he has no authority to interfere with the jury's

finding upon the issues of fact, he has failed to exercise the discretion imposed upon him by law, and the case will be dealt with upon the assumption that the judge would have granted a new trial if he had thought he had the power to do so. See *Merchants & Miners Transportation Co.* v. *Corcoran,* 4 *Ga. App.* 654 (62 S. E. 130); *Savannah Electric Co.* v. *Badenhoop,* 6 *Ga. App.* 371, 376 (65 S. E. 50); *Walters* v. *State,* 6 *Ga. App.* 565, 566 (65 S. E. 357); *Livingston* v. *Taylor,* 132 *Ga.* 9 (63 S. E. 696); *Central Ry. Co.* v. *Harden,* 113 *Ga.* 453 (38 S. E. 949). If, however, the order of the trial judge is equivocal and susceptible of two constructions, that interpretation will be given it which is in consonance with the theory that the trial judge has performed his duty and exercised the discretion vested in him by law.

Some stress is laid by the defendant in error upon the fact that this is the second verdict, and that the judge had not as broad discretion as he would have had if the finding in the plaintiff's favor had been the first one. It is true that the judge's discretion is somewhat weakened after the second verdict, but in passing upon the second verdict it is as much his duty to exercise whatever discretion he had as it is to exercise the broader discretion with which the law vests him in dealing with the first verdict. Evidently the purpose of the law is to require the trial judge to give more force and effect to each succeeding verdict. It makes no difference how greatly the evidence may preponderate in favor of the verdict, if there be a conflict, however slight, the discretion of the trial judge in setting the first verdict aside will never be controlled. In reviewing that verdict he may enter the jury box and become both judge and jury. In reviewing the second verdict he may and ought to resolve his doubts in favor of the jury's finding. And with each succeeding verdict the power of the jury increases and that of the judge diminishes in a corresponding degree. If the judge is clear that the second verdict is wrong, he should set it aside; but if, in passing upon the second verdict, the trial judge entertains doubt in reference to the truth of the case, and in overruling the motion for a new trial says, in substance, "Had I been on the jury I would probably not have found this verdict, but the question is doubtful, and I will resolve my doubts in favor of the jury's finding," he would be doing merely what the law says he ought to do, and an order to that effect would not be regarded as such a disapproval of

the verdict as that the reviewing court would be bound to assume that the judge had failed to exercise the discretion imposed upon him by law. In the present case the trial judge said: "So two juries have found on the facts in favor of the plaintiff, and I would not be justified in granting this motion unless there has been an error of law committed by the court against the defendant." In the light of the principles above discussed, and especially of the rule which requires us to assume, until the contrary appears, that the judge has performed his duty, what construction should be given this order? It means, we think, simply that the judge was of the opinion that, in view of the fact that this was a second verdict, he did not have as broad discretion as he would have had in dealing with a first verdict; and that for that reason he would not be justified, under the rules of law applicable to the case, in setting aside the verdict. In other words, that while he would not, perhaps, have made the finding had he been on the jury, he did not feel that, with the diminished discretion which the law gives him, it would be right to set the verdict aside. The trial judge who passed upon this motion is one of the fairest and ablest magistrates whose decisions are subject to review by this court. He is familiar with the rule of law which requires him, in passing upon a motion for a new trial, to exercise such discretion as the law imposes upon him. Properly construed, we do not think there is anything in the order which requires a finding that he has failed to perform this duty.

2. It remains to be determined whether any error of law has been committed of sufficient materiality to require a reversal of the judgment overruling the motion for a new trial. The judge charged the jury, in substance, that, if the defendant failed to exercise extraordinary care in giving the plaintiff reasonable time in which to alight from the car, and negligently caused the car to move while she was in the act of alighting, and the injury was due to this failure to exercise such extraordinary care, the plaintiff would be entitled to recover. Error is assigned upon this instruction, upon the ground that the court failed, in the same connection, to charge the jury that the plaintiff would not be entitled to recover if by the exercise of ordinary care she could have avoided the injury. In another part of the charge the jury were distinctly instructed that the plaintiff could not recover if the injury was caused by her own negligence, or if she could have avoided the consequences to herself

49

caused by the defendant's negligence. The duty imposed by law upon the plaintiff, to exercise ordinary care to avoid the consequences of the defendant's negligence, does not arise until that negligence is existing and is apparent or the circumstances are such that an ordinarily prudent person would have reason to apprehend its existence. *Western & Atlantic Railroad Co.* v. *Ferguson,* 113 *Ga.* 708 (39 S. E. 306). It has been several times held that, where the pleadings and the evidence require it, the judge, even in the absence of a written request, should charge the jury that a plaintiff can not recover on account of negligence, the consequences of which he could have avoided by the exercise of ordinary care. And, where there is a general denial of the allegation that the plaintiff was free from fault, it is not essential that this rule of law should be pleaded as an affirmative defense. *West End Ry. Co.* v. *Mozely,* 79 *Ga.* 463 (4 S. E. 324); *Atlanta, Knoxville & Northern Ry. Co.* v. *Gardner,* 122 *Ga.* 82 (49 S. E. 818); *Atlantic Coast Line Railroad Co.* v. *Canty,* ante, 411. In cases of suits by employees before the passage of the act of 1909 it was held that if the judge instructed the jury that before the plaintiff could recover he must be entirely free from fault or negligence, it was not erroneous to fail to charge that he could not recover if, by the exercise of ordinary care, he could have avoided the consequences of the defendant's negligence. *Louisville & Nashville R. Co.* v. *Thompson,* 113 *Ga.* 983 (39 S. E. 483); *Georgia, Florida & Alabama Ry. Co.* v. *Sasser,* 4 *Ga. App.* 276 (61 S. E. 505). These decisions, doubtless, proceed upon the theory that an employee could not be wholly free from fault if, by the exercise of ordinary care, he could have avoided the consequences of the defendant's negligence, and that for this reason a general instruction that he must have been entirely free from fault or negligence was sufficient, in the absence of a written request for a more specific charge. It is, of course, not erroneous to fail to charge the rule of law now under consideration, unless both the pleadings and the evidence require such an instruction. In the present case, the plaintiff having alleged that she was wholly free from fault, and this allegation having been denied, the pleadings were sufficient, under the authority of the *Mozely* and *Gardner* cases, supra, to raise an issue as to whether she could, by the exercise of ordinary care, have avoided the consequences of the defendant's negligence. On prin-

ciple it would seem that this rule of law constitutes an affirmative defense and should be specially pleaded. Certainly, whether specially pleaded or not, it should not be given in charge, unless the jury would be authorized to find that the plaintiff could, by the exercise of ordinary care, have avoided the consequences of the defendant's negligence.

According to the testimony for the plaintiff, the car had come to a full stop and she was in the act of alighting, when the car gave a sudden jerk and she was thrown to the pavement. According to the testimony of the conductor and the motorman and some of the passengers, the car had stopped and the plaintiff was standing on the step, when she suddenly tumbled over as if she had been pushed forward; there was no jerk, and the car was not in motion. One witness testified that the plaintiff fell after she had gotten off the car. One of the defendant's witnesses testified that the plaintiff was standing on the running board and stepped off while the car was moving, and the jerk of the car precipitated her to the ground. The jury evidently accepted the plaintiff's version of the transaction; and if that be the truth of the case, the proximate cause of the plaintiff's injury was the negligence of the motorman in suddenly starting the car forward before she had time to alight. Under this theory, the rule of law invoked, requiring the plaintiff to exercise ordinary care to avoid the consequences of the defendant's negligence, was not applicable; for, as was said by this court in the case of the *Georgia, Florida & Alabama Ry. Co.* v. *Sasser,* supra, "the beginning and the end of the whole casualty were included in the same twinkling of an eye," and there was nothing which the plaintiff could have done to avoid the consequences of the defendant's negligence after it became existent and operative. If the testimony of most of the defendant's witnesses be accepted as the truth of the case, the plaintiff's injury was the result of pure accident, for which nobody was to blame, and there was no negligence the consequences of which it was her duty to avoid. Under the testimony of the witness, Mrs. Schloss, the defendant was not negligent in failing to stop the car before it reached the street-crossing where the plaintiff desired to alight. If the plaintiff attempted to step off the moving car before it reached her destination, without the knowledge of the motorman, the defendant was guilty of no negligence. If the defendant was negligent in failing to stop

promptly at the street-crossing, the sudden jerk, and not the failure to stop, was the proximate cause of the injury; for, according to the testimony of Mrs. Schloss, the plaintiff was precipitated to the ground in consequence of a jerk, which the plaintiff had no reason to anticipate, and the consequences of which she could not have avoided. So that under no view of the evidence was an instruction upon this theory demanded.

The plaintiff in error relies upon the decision of the Supreme Court in the case of *West End Ry. Co.* v. *Mozely,* supra. In that case the following instruction was held to be erroneous, because the judge failed to qualify it by charging that the plaintiff must have used ordinary care to avoid the consequences of the defendant's negligence: "If the plaintiff signalled the driver to stop, and the driver did not stop, so as to allow the plaintiff reasonable opportunity to alight with safety, but only slackened his speed, and the plaintiff, to avoid being carried beyond his destination, and availing himself of what opportunity was afforded him to alight, endeavored to get off the car while in motion and was thrown by a sudden jerk of the car, the defendant would be liable, provided you believe from the evidence that the driver was negligent in not stopping the car altogether." The Supreme Court held that this charge should have been qualified by saying, "if the jury further believed that the plaintiff used all reasonable and ordinary care and diligence to avoid the consequences of the defendant's negligence to himself." Under the instruction just quoted, the negligence of the defendant consisted in failing to stop the car at the plaintiff's destination. This negligence was necessarily apparent to the plaintiff. It was therefore his duty to use ordinary care to avoid the consequences of the negligence of the defendant in taking him beyond his destination. The act of attempting to alight from the moving car at his destination was not necessarily, as a matter of law, such negligence as would completely defeat his right to recover; but, if he was lacking in ordinary care and by the exercise of such diligence could have avoided the consequences of the defendant's negligence, he was not entitled to recover.

There is no theory of the evidence in the present case which would bring it within the rule announced in the *Mozely* case, unless it be that contained in the testimony of the defendant's witness, Mrs. Schloss. While this witness does testify that the plain-

tiff was in the act of alighting from the moving car, taking her testimony all together the car suddenly started while the plaintiff was in the act of alighting, and this negligent act in suddenly starting the car was the proximate cause of the plaintiff's injuries. If the motorman knew that the plaintiff was endeavoring to alight, and suddenly accelerated the speed of the car, there was nothing that the plaintiff could have done to avoid the consequences of this act of negligence after it became apparent. On the other hand, if the motorman did not know, and, by the exercise of due diligence, could not ascertain, that the plaintiff was attempting to alight from the moving car, he was not guilty of negligence in moving it forward. Even assuming that the testimony of this witness is the truth of the transaction, the car was moving slowly when the plaintiff attempted to alight, and she doubtless would not have been injured at all if the speed of the car had not suddenly been increased. The sudden increase of speed, and not the failure to stop at the street-crossing, was the proximate cause of the plaintiff's damage. So that, under any theory of the evidence, the jury were compelled to find that the plaintiff's injuries resulted from the negligence of the defendant in suddenly jerking the car forward, and this was done so quickly that no amount of diligence would have availed the plaintiff after this negligence became apparent to her.

3. Complaint is also made of a charge which instructed the jury negatively that the plaintiff would not have a right to recover if her injuries were not due to one or more acts enumerated in the charge,—among others, to the failure to warn her of the intention to start the car. The trial judge added that, if the plaintiff's injuries were due to the defendant's failure of duty in the respect indicated, she would have a right to recover. Taken alone, this extract from the charge might be subject to the criticism that it assumed that certain acts on the part of the defendant would be negligence, whereas this was a question exclusively for determination by the jury; but when it is read in the light of the entire charge (which is manifestly fair to the defendant, and, taken as a whole, clearly states the rules of law applicable to the case, and also the rule that it is for the jury to say whether the defendant has been negligent in the several respects alleged in the petition), we do not think a new trial is demanded on account of this extract.

4. The evidence fully authorized the verdict. The plaintiff in error contends that the great preponderance of the evidence is with the defendant, and urges this as a reason why the judgment should be reversed because the judge failed to unqualifiedly approve the verdict. As illustrating what we have said above about doubts in reference to where the preponderance of the evidence lies, the evidence makes a different impression upon our minds from that which it has made upon counsel for the defendant. It is true the defendant had the greater number of witnesses, but the theory presented by them, that the plaintiff, without any reason apparently for so doing, stood for some time on the step of the car, which had already stopped at her destination, and suddenly tumbled off without fault on the part of the defendant, and without any proof that she had had a sudden accession of illness, is very much more unreasonable than her theory that she was in the act of alighting from the car, which had come to a stop, and the motorman suddenly moved the car forward and she was thrown to the ground. The plaintiff was a woman fifty-six years of age, and in all probability could not alight from a car as rapidly as could a person younger and more vigorous. One of the defendant's witnesses was impeached by proof of contradictory statements. The verdict was not legally excessive, and the judge did not err in overruling the motion for a new trial.

*Judgment affirmed.*