**CAPITAL LIFE & HEALTH INS. CO. v. BOWERS, Collector of Internal Revenue.**

No. 6163.

United States Court of Appeals Fourth Circuit.

Argued Nov. 17, 1950.

Decided Jan. 3, 1951.

G. L. B. Rivers, Charleston, S. C. (D. McK. Winter, Columbia, S. C., and Hagood, Rivers & Young, Charleston, S. C., on the brief), for appellant.

Francis W. Sams, Sp. Asst. to the Atty. Gen. (Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack and A. F. Prescott, Sp. Assts. to the Atty. Gen., Ben Scott Whaley, U. S. Atty., Charleston, S. C., and Claud N. Sapp, Jr., Asst. U. S. Atty., Columbia, S. C., on the brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

The Insurance Company sued the Collector of Internal Revenue to recover social security taxes in the sum of $7,381.21 for the years 1943 to 1948, paid by it under protest under the Federal Insurance Contributions Act, Int. Rev. Code, §§ 1400 to 1432, 26 U.S.C.A. §§ 1400–1432; and also the sum of $3,953.70 for taxes for the years 1943 to 1947 paid by it under protest under the Federal Unemployment Tax Act, Int. Rev. Code, §§ 1600–1611, 26 U.S.C.A. §§ 1600–1611. The taxes were based upon compensation in the form of commissions paid by the taxpayer to its agents for services rendered, and the question for decision is whether the agents were employees within

the meaning of the statutes, or beyond the reach of the Federal Insurance Contributions Act as independent contractors under Section 1426 thereof, and outside the scope of the Federal Unemployment Tax Act under Section 1607 thereof as insurance agents or solicitors remunerated solely by way of commissions.

The taxpayer is engaged in the business of writing life, accident and health insurance in South Carolina. The policies are limited to a maximum of $1,500 on any one life and the premiums are payable weekly in small amounts. The home office of the company is in Columbia, South Carolina, and there are nineteen offices in the state operated by a manager and assistant manager and a cashier, and in some instances by field supervisors, all of whom are admittedly employees. In addition a number of agents are attached to each office, some on a salary basis and some on a commission basis. The type of work done by the agents, whether compensated by salary or commissions, is substantially the same. The principal difference is that the salaried men are required to report at the office each morning so as to keep them up to their work, while the commission men are not required to report daily. Both classes of agents are furnished desks at the office and free telephone service. All agents go through a regular training period but before they are put to work, they are allowed to choose at the end of the period whether they will work on salary or commissions. It is admitted that the salaried agents are employees.

Those parts of the state where the company does business are divided into areas known as "debits" in which the policies vary from 600 to 700 in number. Each debit is assigned to an agent. It contains the material upon which the major part of his efforts is to be expended. The policy holders therein are listed in a collection book, one on each page, which is prepared by the company and furnished to the agent. He enters therein the weekly premiums collected and makes a similar entry on a premium receipt card retained by the policy holder. At the end of each week the agent must fill out on company forms a statement showing the page number of policies on which premiums have been collected, the amount collected, as well as the number of policies lapsed, and the number of policies issued or revived. If payments are not made on a policy for a period of four weeks, the company has the power to lapse the policy under its terms; and the agent, who alone has first hand knowledge of the collections, is required to report lapses promptly to the company. Since the number of policies lapsed in this kind of business is substantial, the agent must write new business in order to maintain the size of his debit and the amount of his commissions which are payable only upon premiums collected. If he fails in making collections or in maintaining the amount of his debit, he finds his position unprofitable and quits. There is no written contract and either party may terminate the relationship at any time. When this is done the agent's collection book and all other records must be surrendered to the company as its property; and, unlike an ordinary life insurance agent, he retains no interest in the premiums subsequently paid on the policies he sold during his agency.

To guide the agent in writing new business, the company furnishes him a rate book in which the rates for the three kinds of insurance issued by the company are set out. This book also contains the rules and instructions for the government of the agent's activities as to writing new insurance, taking applications, collecting premiums, paying claims when approved by the company, reporting lapses, revival and transfer of policies and keeping a correct collection book. The rate book also informs the agent that field inspections will be made when deemed necessary by the manager or by the home office.

In view of these undisputed facts, the District Judge made the finding that the relationship between the company and the commission agents is such that the company has the right to control and direct them in respect to the details of their work and the results to be accomplished; and the judge also found that the company does exercise such direction and control to the extent that it sees fit. In short, the court held

that the agents compensated on a commission basis were employees of the company and that the commissions paid them were remuneration for their services during the tax years.

The appellant relies on the amendment of the Social Security Act, known as the Gearhart Resolution, which was passed by Congress in 1948 and made retroactive to August 14, 1935, 62 Stat. 438, § 1, Int.Rev. Code, § 1426(d), 26 U.S.C.A. § 1426(d). It provides "(d) Employee. The term 'employee' includes an officer of a corporation, but such term does not include (1) any individual who, under the usual common-law rules applicable in determining the employer-employee relationship, has the status of an independent contractor or (2) any individual (except an officer of a corporation) who is not an employee under such common-law rules." The contention is that the agents were not employees of the company but had the status of independent contractors at common law, in that they were free from the control of the company in doing the work for which they were paid. It is pointed out that the commission agents were not required to report to the office daily and that although they were expected to collect the premiums in the area assigned to them, and also to write new business to offset lapsed policies, they were free to go to work when they pleased and to write new business when and where they pleased, in or outside that area. It is urged in short that they were subject to no requirements except to be honest and accurate and to

conduct themselves in accordance with the law of South Carolina, and that therefore they have that freedom of action which characterizes the status of an independent contractor and is illustrated in numerous cases.[1]

There are similarities in certain respects between the facts of these cases and the facts of the case at bar, but when all the circumstances of the present controversy are examined, it becomes obvious that the seeming freedom from control of the commission agents is lacking in reality, and that they are in fact as completely subject in all material respects to company direction as the salaried agents whose employee status under the statute is not questioned. Long experience of the taxpayer and other companies in this field has resulted in the adoption of methods and forms best suited to the business which leave little discretion to the agents, while the diligence and industry required to collect the small weekly premiums on hundreds of policies and to write new business to keep the debit at a proper volume compel the agent to spend so much time in his debit area and to report his activities and account for his collections at the office so frequently as to leave him little freedom of action.[2] It follows that the judgment of the District Court should be affirmed insofar as it rejected the claim of the taxpayer for the return of taxes paid by it under the Federal Insurance Contributions Act.

The same considerations distinguish the status of the commission agent in this

1. See Ewing v. Vaughan, 4 Cir., 169 F.2d 837; Dimmitt-Richoff-Bayer Real Estate Co. v. Finnegan, 8 Cir., 179 F.2d 882; Magruder v. Yellow Cab Co., 4 Cir., 141 F.2d 324, 152 A.L.R. 516; Glenn v. Beard, 6 Cir., 141 F.2d 376; Cf. McComb v. Home Workers Handicraft Co., 4 Cir., 176 F.2d 633; Southern R. Co. v. Black, 4 Cir., 127 F.2d 280.

2. It was assumed in Bowen v. Home Beneficial Life Ins. Co., 4 Cir., 183 F.2d 376, that an agent of an industrial insurance company compensated by commissions on collections in a debit assigned to him by commissions on new business was an employee of the company under Section 8 of the Selective Service Training Act, 50

U.S.C.A. Appendix, § 308; and it was assumed in Home Beneficial Life Ins. Co. v. N. L. R. B., 4 Cir., 159 F.2d 280, that such an agent is an employee of the company under the National Labor Relations Act, 29 U.S.C.A. § 151 et seq. See also Gulf Life Ins. Co. v. McDaniel, 65 Ga. App. 549, 43 S.E.2d 784, where it was held that an agent of an insurance company who was employed on a prescribed area or debit of industrial insurance and also had authority to write ordinary insurance anywhere in the state, was an employee of the company and not an independent contractor in respect to his work in the industrial field and that the company was liable for torts committed by him while so engaged.

case from that of the insurance agent or insurance solicitor excepted from the scope of the Federal Unemployment Tax Act by the terms of Section 1607(c) (14) which provies: "(14) Service performed by an individual for a person as an insurance agent or as an insurance solicitor, if all such service performed by such individual for such person is performed for remuneration solely by way of commission;"

The insurance agent or solicitor contemplated by this exception is one who is engaged primarily in the sale of insurance to new policy holders and does not collect insurance premiums which are paid by the policy holders directly to the company. Such an agent usually has a wide and unrestricted area of permissible activity, is possessed of knowledge of a considerable variety of insurance contracts and is qualified to advise prospective policy holders as to the kind of policies best suited to their needs. He is primarily a policy writing agent and not a collector of premiums. The contrast is marked between his work and that of the commission agent who, as in this case, is given a prepared debit to collect, is paid only by commissions on collections, and is limited to the sale of three kinds of policies, namely, standard adult 20 payment life, weekly sick and accident benefit and hospitalization policies, which must be issued in accordance with precise company instructions.

The judgment of the District Court is Affirmed.