T.C. Summary Opinion 2005-159

UNITED STATES TAX COURT

MATTHEW HUDACK AND KRISTEN HUDACK, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 3432-04S.                    Filed November 2, 2005.

Matthew Hudack, pro se.

<u>Michael S. Hensley</u>, for respondent.


PANUTHOS, <u>Chief Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time that the petition was filed.[1]

---

[1] Unless otherwise indicated, all subsequent section references are to the Internal Revenue Code (Code) in effect at relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.  All monetary amounts are rounded to the nearest dollar.

The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.

Respondent determined deficiencies in petitioners' Federal income taxes as well as accuracy-related penalties as follows:

| Year | Deficiency | Penalty Sec. 6662(a) |
|------|-----------|----------------------|
| 1999 | $17,096 | $3,419 |
| 2000 | 16,469 | 3,294 |

After petitioners' concessions,[2] the issues for decision are: (1) Whether Matthew Hudack (petitioner) was a statutory employee for 1999 and 2000 (years in issue); and (2) whether petitioners are liable under section 6662(a) for accuracy-related penalties for the years in issue.

Adjustments to the amounts of petitioners' itemized deductions and the alternative minimum tax are purely computational matters, the resolution of which depends on our disposition of the first disputed issue.

## Background

Some of the facts have been stipulated, and they are so found. We incorporate by reference the parties' stipulation of facts and the accompanying exhibits.

At the time that the petition was filed, petitioners resided in Santa Ana, California.

_____

[2] For 1999, petitioners concede that they are not entitled to claimed "business promotion" expenses of $974 and "client costs" expenses of $402.

In 1986, petitioner received his license to sell life insurance products in the State of California. From 1986 to June 1990 and from June 1993 to at least the date of trial, petitioner worked for the Manufacturers Life Insurance Co. (USA) (Manulife) selling life insurance products. Manulife is a Toronto-based insurance company that sells annuities, group pensions, insurance policies, and college savings plans and provides investment account management services.

On January 1, 1999, petitioner executed a "Regional Director Employment Agreement" (agreement) with Manulife, which was in effect during the years in issue.[3] The agreement required petitioner to serve Manulife full time as a primary representative and an integral part of Manulife's sales service for an indefinite period. The agreement also required petitioner to "agree not to sell, solicit, market or otherwise promote financial products for any company other than" Manulife and its subsidiaries without Manulife's written consent and to adhere to all policies, procedures, and written rules and regulations of Manulife including Manulife's codes of conduct.

Under the agreement, petitioner was an at-will employee. The agreement provided that petitioner was "attached" to Manulife's Orange County Sales Office in Irvine, California (Irvine office), and assigned him the southern California sales

---

[3] Manulife has 29 regional directors nationwide.

territory.  The agreement set petitioner's compensation on a commission schedule based on the business category for the products that he sold.[4]  In addition, Manulife provided petitioner with an annual reimbursement allocation, which petitioner could use for any business-related expense.[5] Petitioner, however, was responsible for business expenses exceeding his reimbursement allocation.  Manulife did not pay petitioner for vacation days, but Manulife provided that petitioner was eligible to enroll in its benefit and retirement plans.

Petitioner's responsibilities were to identify sales opportunities for insurance agents, brokers, financial planners, and stockbrokers and to provide financial plans for their clients.  As the regional director, petitioner reported his goals and objectives to the western regional manager.  In his sales presentations, petitioner used financial planning information packets that were preapproved by Manulife.[6]  Petitioner's only office location was the Irvine office.  Petitioner purchased his

---

[4]  Although not further explained in the record, it appears that petitioner received an annual base salary of $60,000 for old sales commissions as evidenced in his 1999 monthly compensation statements.

[5]  The record does not disclose the amount of petitioner's reimbursement allocation, nor does it explain Manulife's reimbursement procedures.

[6]  For 1999, petitioner led the company in sales for life insurance products.

own computer, fax machine, and cellular phone for use in his sales activities, but he paid no rent or other business expenses (e.g., utilities, office supplies and equipment, furniture, and copier) in connection with the Irvine office. Those expenses were paid by Manulife. In the Irvine office, Manulife employed two support staff employees to assist petitioner.

Manulife issued Forms W-2, Wage and Tax Statement, to petitioner reporting wages or other compensation of $496,053 and $436,891 for 1999 and 2000, respectively. The Forms W-2 also reported that Manulife withheld the applicable payroll taxes. The Forms W-2 further indicated that petitioner participated in Manulife's health insurance program, pension plan, and deferred compensation plan. Manulife did not check box 15 for statutory employee.[7]

Petitioners timely filed a Form 1040, U.S. Individual Income Tax Return, for each of the years in issue. Petitioners attached to each return, inter alia, a Schedule C, Profit or Loss From Business. On each Schedule C, petitioner identified his principal business or profession as life insurance sales and his business address as the Irvine office. Petitioner reported the following on the Schedules C:

---

[7] We note that the 2000 Form W-2 box 15 for statutory employee contained a handwritten "X".

| Year | Gross Receipts[1] | Total Expenses | Net Profit |
|------|-------------------|----------------|------------|
| 1999 | [2]$526,773 | $98,890 | $427,883 |
| 2000 | 441,898 | 76,540 | 365,358 |

[1] Gross receipts included the amounts reflected on the respective Forms W-2 issued by Manulife as well as self-employment income from other sources.

[2] In 1999, petitioner received self-employment income of $3,400 from Manulife, which was reported on a Form 1099-MISC, Miscellaneous Income.

Expenses consisted of advertising, automobile expenses, commissions and fees, depreciation, insurance, legal and professional services, office expenses, rent or lease of equipment, supplies, travel, meals and entertainment, utilities, and other expenses.[8]

Petitioner consulted with his return preparer, W.R. Frey (Mr. Frey), and discussed the nature of his work. Following the consultation, Mr. Frey advised petitioner to file as a statutory employee.

In the notice of deficiency, respondent determined that petitioner was a common law employee and, therefore, not permitted to report income and expenses on Schedule C. Respondent further determined that petitioners are liable for the accuracy-related penalty under section 6662(a).

---

[8] We note that petitioner did not report on his return any reimbursement income or its associated expense because he considered it a "wash".

## Discussion

A.   Petitioner's Employment Status[9]

Generally, adjusted gross income means gross income less trade or business expenses, except in the case of the performance of services by an employee.  Sec. 62(a)(1).  As relevant herein, an individual performing services as an employee may deduct expenses incurred in the performance of services as an employee only as miscellaneous itemized deductions on Schedule A, Itemized Deductions, and then only to the extent such expenses exceed 2 percent of the individual's adjusted gross income.  Secs. 62(a)(2); 63(a), (d); 67(a) and (b); 162(a).  In contrast, an individual who qualifies as a statutory employee as defined under section 3121(d)(3) is not subject to the section 67(a) 2-percent limitation for expenses incurred in the performance of services as an employee.  Rev. Rul. 90-93, 1990-2 C.B. 33.[10]  Thus, a statutory employee under section 3121(d)(3) is allowed to deduct expenses from gross income on Schedule C that otherwise would be

---

[9]   We render a decision on the merits based on the preponderance of the evidence, without regard to the burden of proof under sec. 7491(a).

[10]   Rev. Rul. 90-93, 1990-2 C.B. 33, provides that an individual treated as a statutory employee under sec. 3121(d)(3) for employment tax purposes who would otherwise be characterized as an independent contractor is not considered an employee for purposes of secs. 62 and 67, and, therefore, may deduct business expenses on Schedule C.

subject to the 2-percent limitation of section 67(a).  See sec. 62(a)(1).

Petitioner contends that he was a statutory employee under section 3121(d)(3)(B) and, therefore, that he may report his business-related income and expenses on Schedule C.

Section 3121(d) defines "employee" for employment tax purposes as follows:

> SEC. 3121(d).  Employee.--For purposes of this chapter, the term "employee" means--
>
>> (1) any officer of a corporation; or
>>
>> (2) any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee; or
>>
>> (3) any individual (other than an individual who is an employee under paragraph (1) or (2)) who performs services for remuneration for any person--
>>
>> *    *    *    *    *    *    *
>>
>>> (B) as a full-time life insurance salesman;

Under section 3121(d)(3), however, the provisions of section 3121(d)(3)(B) apply only if a full-time life insurance salesman does not have the status of an employee under the usual common law rules applicable in determining the employer-employee relationship.  <u>Lickiss v. Commissioner</u>, T.C. Memo. 1994-103.

Therefore, we must first determine whether petitioner was a common law employee during the years in issue.[11]

For purposes of section 62(a), subtitle A of the Code does not define "employee". Under these circumstances, we apply common law rules to determine whether an individual is an employee. Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 323-325 (1992); Weber v. Commissioner, 103 T.C. 378, 386 (1994), affd. 60 F.3d 1104 (4th Cir. 1995). Whether an individual is a common law employee is a question of fact. Profl. & Executive Leasing, Inc. v. Commissioner, 862 F.2d 751, 753 (9th Cir. 1988), affg. 89 T.C. 225 (1987); Simpson v. Commissioner, 64 T.C. 974, 984 (1975). Among the relevant factors in determining the nature of an employment relationship are the following: (1) The degree of control exercised by the principal over the details of the work; (2) the taxpayer's investment in the facilities used in the work; (3) the taxpayer's opportunity for profit or loss; (4) the permanency of the relationship between the parties; (5) the principal's right of discharge; (6) whether the work performed is an integral part of the principal's business; (7) what relationship the parties believe they are creating; and (8) the provision of employee benefits. NLRB v. United Ins. Co., 390 U.S. 254, 258 (1968); Profl. & Executive Leasing, Inc. v.

---

[11] The parties agree that petitioner otherwise qualifies as a full-time life insurance salesman pursuant to sec. 3121(d)(3)(B).

Commissioner, supra; Simpson v. Commissioner, supra. No one factor is determinative; rather, all the incidents of the relationship must be assessed and weighed. NLRB v. United Ins. Co., supra.

1. Degree of Control

The crucial test to determine the nature of a working relationship is the employer's right to control the manner in which the taxpayer's work is performed. Weber v. Commissioner, supra at 387. It is not necessary for the employer to exercise control over the details of the taxpayer's work; rather, all that is necessary is that the employer have the right to control the details of the taxpayer's work. Profl. & Executive Leasing, Inc. v. Commissioner, supra at 754; McGuire v. United States, 349 F.2d 644, 646 (9th Cir. 1965); Weber v. Commissioner, supra at 388. To retain the requisite control over the details of an individual's work, the employer need not stand over the individual and direct every move made; it is sufficient that the employer has the right to do so. Weber v. Commissioner, supra at 388. Similarly, the employer need not set the individuals's hours or supervise every detail of the work environment to control the individual. Gen. Inv. Corp. v. United States, 823 F.2d 337, 342 (9th Cir. 1987).

While petitioner had control over his own sales performance, Manulife had the right to control the manner in which he

performed his work.  Manulife set petitioner's sales commission schedule, his sales territory, and his annual reimbursement allocation.  Moreover, Manulife restricted petitioner's ability to sell or promote other company's financial products without Manulife's consent and required petitioner to use preapproved financial information packets to market Manulife's life insurance products.  In addition, Manulife required petitioner to use the Irvine office to conduct business and to use Manulife's support staff to assist him in his sales activities.  These facts suggest that Manulife generally retained the right to regulate and direct petitioner's business activities.

We give little or no weight to the fact that the agreement merely required petitioner to adhere to Manulife's policies, procedures, written rules, and codes of conduct and that Manulife required petitioner to report his goals and objectives to the western regional manager because the record does not identify the procedures for enforcement of the rules and for reporting requirements.

The totality of the evidence on this factor supports a finding that Manulife had the right to control the manner in which petitioner performed his work and that petitioner therefore was an employee of Manulife.

2.  Investment in Facilities

During the years in issue, petitioner worked out of Manulife's Irvine office, which was his only work location. Indeed, petitioner's business contact information listed the Irvine office as his business address.

Moreover, Manulife employed at its Irvine office two support employees to assist petitioner in his sales activities. Manulife was responsible for hiring, supervising, and paying these employees. Although petitioner provided his own computer and fax machine, he was not otherwise responsible for any business expenses associated with this office, including rent, office supplies, equipment, and furniture.

This factor strongly suggests that petitioner was an employee of Manulife.

3.  Opportunity for Profit or Loss

Petitioner received commissions based on his sales performance. Manulife also reimbursed petitioner for his business expenses up to an annual limit.

Compensation on a commission basis is entirely consistent with an employer-employee relationship. Tex. Carbonate Co. v. Phinney, 307 F.2d 289, 292 (5th Cir. 1962); Capital Life & Health Ins. Co. v. Bowers, 186 F.2d 943 (4th Cir. 1951). While petitioner conceivably could have suffered some loss as a result of his sales activities, he may still be an employee under the

common law test if his risk of loss was negligible. Lewis v. Commissioner, T.C. Memo. 1993-635; Radovich v. Commissioner, T.C. Memo. 1954-220. Moreover, the risk that he would not receive any commissions because of low sales performance is common to both employees and statutory employees.

Other than his computer, fax machine, cellular phone, and business expenses that exceeded his annual reimbursement allocation, petitioner did not have any capital investments or bona fide liability for expenses (such as salary payments to unrelated employees) in his sales activities such that he would be subject to a real risk of economic loss.

This factor supports a finding that petitioner was an employee of Manulife.

4. Permanency of Relationship

Since becoming a licensed life insurance salesman in 1986, petitioner has worked for Manulife from 1986 to June 1990 and again from June 1993 to at least the date of trial. Moreover, under the agreement, petitioner was hired to work for an indefinite period of time.

This factor supports a finding that petitioner was an employee of Manulife.

5. Principal's Right To Discharge

The relationship between petitioner and Manulife was terminable at the will of either party without any further

compensation. With respect to a statutory employee, the parties would likely have this same right. Therefore, we accord this factor little or no weight.

6. Integral Part of Business

Manulife is in the business of selling its products. Sales representatives, such as petitioner, are Manulife's key connection with its customers. This factor supports a finding that petitioner was an employee of Manulife. See Lewis v. Commissioner, supra.

7. Relationship Parties Believe They Created

Petitioner contends that he was a statutory employee. On the Forms W-2, however, Manulife did not mark the statutory employee box. Further, Manulife paid the applicable payroll taxes and did not issue a Form 1099. The withholding of such taxes by Manulife is consistent with a finding that petitioner was an employee. See Azad v. United States, 388 F.2d 74, 78 (8th Cir. 1968); Weber v. Commissioner, 103 T.C. at 392.

This factor would support a finding that petitioner was an employee.

8. Employee Benefits

Petitioner participated in Manulife's pension plan and deferred compensation plan. Moreover, petitioner received health benefits through Manulife's group health insurance plan.

Typically, statutory employees are not entitled to participate in employee benefit plans. There is an exception, however, for full-time life insurance salespeople who are treated as employees for purposes of certain employee benefit programs maintained by a business. Sec. 7701(a)(20). We find this factor is neutral.

9. Conclusion as to Employment Status

On balance, considering the record and weighing all of the factors, we conclude that during the years in issue petitioner was a common law employee, rather than a statutory employee under section 3121(d)(3)(B). Therefore, petitioner is not entitled to report gross income and expenses on Schedule C. Accordingly, we sustain respondent's determination on this issue.

B. Section 6662(a) Accuracy-Related Penalty

The final issue for decision is whether petitioners are liable for accuracy-related penalties under section 6662(a) for the years in issue.

Section 6662(a) imposes a penalty equal to 20 percent of any underpayment of tax that is attributable to either negligence or disregard of rules or regulations, or a substantial understatement of income tax. See sec. 6662(a) and (b)(1) and (2).

The term "negligence" includes any failure to make a reasonable attempt to comply with the provisions of the internal

revenue laws.  Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs.  The term "disregard" includes any careless, reckless, or intentional disregard.  Sec. 6662(c); sec. 1.6662-3(b)(2), Income Tax Regs.

An understatement of income tax is "substantial" if it exceeds the greater of 10 percent of the tax required to be shown on the return, or $5,000.  Sec. 6662(d)(1)(A).  An "understatement" is defined as the excess of the tax required to be shown on the return over the tax actually shown on the return.  Sec. 6662(d)(2)(A).

Whether the accuracy-related penalty is applied because of negligence or disregard of rules or regulations, or a substantial understatement of tax, section 6664 provides an exception to imposition of the accuracy-related penalty if the taxpayer establishes that there was reasonable cause for the understatement and that the taxpayer acted in good faith with respect to that portion.  Sec. 6664(c)(1); sec. 1.6664-4(b), Income Tax Regs.; see United States v. Boyle, 469 U.S. 241, 242 (1985).  Although not defined in the Code, "reasonable cause" is viewed in the applicable regulations as the "exercise of ordinary business care and prudence".  Sec. 301.6651-1(c)(1), Proced. & Admin. Regs.; see United States v. Boyle, supra at 246.  The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into

account all the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. Generally, the most important factor is the extent of the taxpayer's effort to assess the proper tax liability, including reliance on the advice of a tax return preparer. Id.

By virtue of section 7491(c), respondent has the burden of production with respect to the accuracy-related penalty. To meet this burden, respondent must produce sufficient evidence indicating that it is appropriate to impose the penalty. See Higbee v. Commissioner, 116 T.C. 438, 446 (2001). Once respondent meets this burden of production, petitioner must come forward with persuasive evidence that respondent's determination is incorrect. Rule 142(a); see Higbee v. Commissioner, supra. As a defense to the penalty, petitioner bears the burden of proving that he or she acted with reasonable cause and in good faith. See sec. 6664(c)(1); see also Higbee v. Commissioner, supra; sec. 1.6664-4(b)(1), Income Tax Regs.

Respondent satisfied his burden of production under section 7491(a)(1) because the record shows that petitioners substantially understated their income tax for the years in issue. See sec. 6662(d)(1)(A)(ii); Higbee v. Commissioner, supra at 442. Accordingly, petitioners bear the burden of proving that the accuracy-related penalty should not be imposed with respect to any portion of the understatement for which they acted with

reasonable cause and in good faith.  See sec. 6664(c)(1); Higbee v. Commissioner, supra at 446.  The mere fact that we held against petitioners with respect to petitioner's employment status does not, in and of itself, require holding for respondent on the accuracy-related penalty.  See Hitchins v. Commissioner, 103 T.C. 711, 719 (1994).

Petitioners contend that they are not liable for accuracy-related penalties because they reasonably relied on their tax return preparer.  On the basis of the entire record in this case and in light of the nature of petitioner's occupation as a life insurance salesperson, we find that petitioners' reliance on their tax return preparer that petitioner was a statutory employee was reasonable.  Therefore, petitioners are not liable for the accuracy-related penalties for the years in issue. Accordingly, respondent's determination on this issue is not sustained.

We have considered all of the other arguments made by the parties, and, to the extent that we have not specifically addressed them, we conclude that they are without merit.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect our disposition of the disputed issues, as well as petitioners' concessions,

<u>Decision will be entered</u>
<u>for respondent as to the</u>
<u>deficiencies in taxes and for</u>
<u>petitioners as to the penalties</u>.