# Wythebille

## UNEMPLOYMENT COMPENSATION COMMISSION OF VIRGINIA v. THE UNION LIFE INSURANCE COMPANY, INC.

June 6, 1945.

Record No. 2897.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Eggleston and Spratley, JJ.

The opinion states the case.

Abram P. Staples, Attorney General, and Kenneth C. Patty, Assistant Attorney General, for the appellant.

Ellsworth Wiltshire and Oscar L. Shewmake, for the appellee.

CAMPBELL, C. J., delivered the opinion of the court.

This is a proceeding under section 7 (a) of the Unemployment Compensation Act (Code, section 1887(99), (a)), instituted by the commissioner, Honorable John Q. Rhodes, for the purpose of determining the status under the Unemployment Compensation Act of all industrial insurance agents of appellee who have been engaged in the performance of its operations at any time since December 31, 1939.

The case was submitted to the commissioner upon an agreed stipulation of facts which are succintly set forth in the petition of appellant as follows:

"The Union Life Insurance Company is a Virginia corporation with its principal office in Richmond. It is engaged in writing industrial life and industrial sick benefit insurance.

"Prior to January 1, 1940, the Company conceded that its agents were in employment under the provisions of the Unemployment Compensation Act then in effect * * * . In March, 1940, the General Assembly of Virginia amended the Unemployment Compensation Act as of January 1, 1940, so as to exclude from coverage under the Act insurance agents and insurance solicitors if all their service as such is performed for remuneration solely by way of commission— Code (Michie's) Section 1887(94), (j), (7), (N). On

account of this amendment the Insurance Company ceased paying unemployment payroll tax to the Virginia Commission on the earnings of all of its agents, but continued to pay such tax on the earnings of its officers, office employees, managers and assistant managers, as it concedes that such individuals are remunerated on a fixed salary basis.

"Prior to May 23, 1940, the usual way employed by the Company to remunerate all its agents was by paying them a definite percentage on the amounts of premiums collected by them and turned in to the Company. On that date the Company put into effect a new plan of remuneration, and invited all the agents to accept the plan. Most of them did, but some preferred to continue on the old basis of being remunerated by being paid a definite percentage of the amount of the premiums collected by them. All of the agents are of the type ordinarily termed 'debit collectors.' A debit consists of the list of the weekly premiums payable by policy holders. The agent, or debit collector, is given such a list and is expected to call on the policy holders periodically and collect the premiums. The agent has the right and is expected to sell new policies, thus increasing the size of his debit, subject to losses by lapses. On the sale of a policy the agent received a commission in addition to his remuneration for servicing the debit. He may have a net increase or a net loss or depreciation of the size of his debit during any one week, depending on whether the collectable premiums added to the debit exceed the lapses.

"There is an understanding between each agent and the company that the agent must collect at least an average of 95% of his weekly debit during each week and that his failure so to do, unless occasioned through sickness or other satisfactory reason, will result in the termination of his relationship with the Company.

"During 1940 and 1941 and the first five months of 1942 (to the time of the commencement of this proceeding) the agents averaged collecting 97.24 per cent of their respective debits.

"The agent's duties, as set forth in the stipulation, are 'to collect and account for his weekly debit, to cause policies on his debit which are in arrears past the grace period to be lapsed by the Company, to solicit and obtain applications for new policies and submit such applications to the Company for approval and issuance, and to deliver new policies to the respective insureds upon issuance.'

"The method of remuneration under the plan inaugurated on May 23, 1940, is set forth in the stipulation as follows:

" 'An agent working in a city receives remuneration based upon his debit as follows:

" 'a. If his debit during any week is less than $100, he receives a commission of $20 for such week.

" 'b. If his debit during any week is between $100 and $110, he receives a commission of $22.50 for such week.

" 'c. If his debit during any week is between $110 and $120, he receives a commission of $23.50 for such week.

" 'd. If his debit during any week is over $120, he receives a commission of $23.50 plus $1 for each $10 of debit in excess of $120.

" 'An agent working in the country receives a remuneration based upon his debit as follows:

" 'a. If his debit during any week is less than $100, he receives a commission of $22.50 for such week.

" 'b. If his debit during any week is between $100 and $110, he receives a commission of $27.50 for such week.

" 'c. If his debit during any week is between $110 and $120, he receives a commission of $28.50 for such week.

" 'd. If his debit during any week is over $120, he receives a commission of $28.50 plus $1 for each $10 of debit in excess of $120.

" 'As further special remuneration under the plan inaugurated on May 23, 1940, whenever an agent has a "weekly premium net increase" during any week, he receives as special remuneration for that week a sum equal to 15 times on one-half of such "weekly premium net increase," but such special remuneration for such week shall not exceed

$10. One-half of such "weekly premium net increase" for such week is then placed in a reserve account. Whenever the agent has accumulated more than $10 in such reserve account, he may be paid an additional 15 times on up to $1 out of such reserve account each week whether he during such weeks makes any "weekly premium net increase" or not, so long as he still maintains at least $10 in such reserve account. Thus, if the agent has a "weekly premium net increase" of $1 for a given week, he receives special remuneration for such week of 15 times 50 cents or $7.50. One-half of this "weekly premium net increase" then goes into the said "reserve account." This procedure continues from week to week. Suppose by virtue of these increases the reserve account of the agent has now reached $12. The next week he can draw above his other remuneration a sum equal to 15 times $1, or $15. This of course reduces the said reserve account by $1 down to $11. He can do the same the next week, even though he has no "weekly premium net increase" for that week, for he still has $1 over the required $10 in his reserve account and is accordingly entitled to receive 15 times such $1, or $15. But this reduces the reserve account down to $10, so that he can draw no further remuneration by virtue of the reserve account until he has increased the reserve account above $10, through his later "weekly premium net increases" as above set out.' "

On November 5, 1942, the commissioner handed down his decision in which this conclusion was reached: " * * * the individuals engaged by the Union Life Insurance Company and designated as agents in the stipulation filed herein are not performing all their services for said company as insurance agents and as insurance solicitors, and that the individuals who accepted the plan of compensation put into effect on May 23, 1940, are not remunerated solely by way of commissions."

In the order carrying into effect the decision of the commissioner, appellee was directed to file wage reports with the commission showing all the earnings up to $3,000 in

any one calendar year, with respect to each individual or agent in its employment after December 31, 1939, and to pay all contributions assessable against it on account thereof. From the decision of the commissioner, appellee filed its petition for review in the Chancery Court of the city of Richmond where the case was heard upon the petition and answer of the commission and the agreed stipulation of facts.

By amendment, effective as of January 1, 1940, section 1887(94), (j), (7), (N), of the Code of 1942, (Michie), reads as follows:

"The term 'employment' after December thirty-first, nineteen hundred and thirty-nine, shall not include:

\*        \*        \*        \*        \*        \*

"Service performed by an individual for an employing unit as an insurance agent or as an insurance solicitor, if all such service performed by such individual for such employing unit is performed for remuneration solely by way of commission."

The trial court, in construing this section of the Code, held that the agents of appellee designated in categories a, b, c and d, *supra*, are not in the employment of appellee under the terms of the statute, and, therefore, reversed the decision of the commissioner. This action is assigned as error.

Appellant strongly relies upon our decision in *Home Beneficial Life Ins. Co.* v. *Unemployment Compensation Comm.*, 181 Va. 811, 27 S. E. (2d) 159, to sustain its contention that the trial court committed error in its holding that the agents of appellee were not in its "employment under the provisions of the statute." In our opinion this contention is untenable.

Mr. Justice Eggleston, speaking for the court, distinctly drew the distinction between the terms "commission" and "salary." There we read:

" 'Commissions,' when 'used to express compensation for services rendered,' *usually* denotes 'a percentage on the amount of moneys paid out or received.' \* \* \*

" 'Salary' is generally defined as *a fixed annual or period-ical payment for services depending upon the time and not upon the amount of services rendered.'* * * "

The distinguishing feature between the *Home Beneficial Case* and the case at bar is that the company paid its agent a minimum weekly salary of $15 until his weekly collections reached the total of $85, after which time he was to receive a straight commission of 20% of the amount collected by him. That situation is not similar to the one here presented, as shown by the related facts. In the instant case, under the terms of the employment contract, the remuneration varies with the agent's efforts; hence, his remuneration is solely by way of commission.

In the *Home Beneficial Case*, this language is applicable: ██ "As is pointed out in *Greer v. Hunt County* (Tex. Com. App.), 249 S. W. 831, 832: 'The controlling element in determining whether the amount to be received is upon a commission or salary basis is whether that amount, by whatever name it may be called, is absolute and fixed regardless of what the lawful commissions may be, or is made contingent upon earning that amount as commissions.'

"Tested by these principles we think it is clear that the guaranteed weekly minimum payment of $15, which was made to Prins prior to the time, that his weekly debit collections amounted to $85, was a salary and not a commission. This payment was not based on a percentage of the collections made. On the contrary, it was a fixed and periodical remuneration for his services which depended solely upon the length of time of the services performed and not upon the amount of such services. The guaranteed weekly stipend was not contingent upon the results obtained other than that the collections did not exceed $85. So long as the collections fell below this amount, the claimant was to be paid the guaranteed minimum amount regardless of whether his results were good or bad."

The decree entered by the learned chancellor so clearly sets forth our view of the case that we adopt it as a part of this opinion:

"Upon consideration whereof, it appearing to the Court from the Stipulation of Facts, constituting a part of the said Exhibit U. C. C. No. 1, that under the plaintiff's plan of remuneration to its agents, inaugurated on May 23, 1940, each agent accepting said plan receives each week remuneration based upon the size of his debit for such week and also receives from time to time certain 'special remuneration' based upon the weekly premium net increase resulting from such agent's activities; that, should such agent's debit during any week be less than $100, he receives a fixed amount of remuneration for such week whatsoever may be the amount of his debit so long as it is less than $100; that, should his debit for any week be $100 or more, he receives remuneration for such week based upon a scale which increases $1 for each $10 increase in debit; that the debit of such agent increases or decreases from week to week dependent upon his activities in writing new insurance and in preventing the lapsing of existing policies of insurance and is therefore substantially and closely related to his activities; that under the terms of Section 2, (j), (7), (N), of the Virginia Unemployment Compensation Act, which section became effective January 1, 1940, the term 'employment' as defined in said Act, after December 31, 1939, shall not include 'Service performed by an individual for an employing unit as an insurance agent or as an insurance solicitor, if all such service performed by such individual for such employing unit is performed for remuneration solely by way of commission;' that each agent of the plaintiff accepting the said plan inaugurated May 23, 1940, is an 'insurance agent' within the meaning of the above quoted portion of said Act; that the said special remuneration received by such agent is solely by way of commission within the meaning of the above quoted portion of said Act; that the remuneration of such agent based upon his debit for each week during which his debit is $100 or more is remuneration solely by way of commission within the meaning of the above quoted portion of said Act; and that the remuneration of such agent based

upon his debit for each week during which his debit is under $100 is not remuneration solely by way of commission within the meaning of the above quoted portion of said Act, doth so adjudge, order, and decree."

The decree of the trial court is affirmed.

*Affirmed.*