## PEOPLES LIFE INSURANCE COMPANY *v.* MARYLAND DEPARTMENT OF EMPLOYMENT SECURITY

[No. 154, September Term, 1969.]

*Decided January 6, 1970.*

The cause was argued before HAMMOND, C. J., and McWILLIAMS, FINAN, SINGLEY and DIGGES, JJ.

*Ralph F. Berlow*, with whom was *Donald A. Krach* on the brief, for appellant.

*Louis B. Price*, *Special Assistant Attorney General*, and *James N. Phillips*, *General Counsel, Maryland Department of Employment Security*, with whom were *Francis B. Burch*, *Attorney General*, and *Warren V. Collier, Jr.*, *Assistant General Counsel*, on the brief, for appellee.

SINGLEY, J., delivered the opinion of the Court.

Peoples Life Insurance Company (Peoples), incorporated in the District of Columbia, has 12 district offices and some 250 "combination agents" [1] in Maryland. Unsuccessful in its efforts to persuade the Maryland Department of Employment Security (the Department) that the services performed by these agents did not constitute covered employment within the meaning of the Maryland Unemployment Insurance Law (the Act), Maryland Code (1957, 1969 Repl. Vol.) Art. 95A, Peoples appealed to the Superior Court of Baltimore City. From an order affirming the determination of the Department's Board of Appeals, Peoples has taken this appeal.

The case comes to us on an agreed statement of facts, as permitted by Maryland Rule 828 g. We shall summarize such of them as are pertinent to the issue presented.

Peoples' combination agents are employed under an agency agreement which provides for remuneration in the form of sales commissions based on premiums paid for policies written by the agent and commissions or ser-

---

1. In the field of industrial insurance, where many premiums are paid on a weekly or monthly basis, it is customary for an agent to solicit applications for policies and collect debits (premiums).

vice fees on collections of premiums on policies already issued. In addition, the agreement provides:

1. For a payment of $10 per week toward automobile expenses, for which the agent does not account, since it seems to be conceded that this is less than the cost of operating a car;

2. That if collection commissions fall below a certain minimum the commission rate may be increased to provide a minimum commission. In the past this has been fixed by Peoples at from $30 to $40 per week;

3. That for the first 17 weeks of an agent's employment an "advance temporary commission" will be paid. The amount of this commission, fixed by Peoples at from $80 to $100 per week, is actually an advance against commissions or other remuneration to be earned in the future.

Additionally, Peoples invites certain of its combination agents to an annual convention, and pays their expenses; provides certain retirement, disability, hospitalization and death benefits; and grants vacations with pay. At the trial below, Peoples apparently conceded that agents who received minimum commissions and advance temporary commissions were engaged in employment covered by the Act. The Department agreed that combination agents compensated only on a commission basis were not covered by the Act, despite payments made by Peoples for convention expenses, insurance benefits, and vacations, these being excluded from the Act's definition of wages in § 20 (n).

The court below identified the only real issue in the case as the status of the agent who received an expense allowance of $10 per week. While Peoples renewed, in its brief, its contention with respect to the minimum commission and the advance temporary commission, a similar concession was made during argument before us. Despite the concession, we propose to consider the status of a combination agent who receives a minimum com-

mission or an advance temporary commission because of the analogy between the payment of such commissions and the payment of expense money.

The answer to the question can be found in § 20 of the Act:

> "As used in this article, unless the context clearly requires otherwise:
>
> * * *
>
> "(g) *Employment and interstate employment.*— (1)
> 'Employment' means service, including service in interstate commerce, performed for remuneration or under any contract of hire, written or oral, express or implied.
>
> * * *
>
> "(7) With respect to services performed after December 31, 1940, * * * the term 'employment' shall not include:
>
> * * *
>
> "(N) Service performed by an individual for a person as an insurance agent or as an insurance solicitor, if all such service performed by such individual for such person is performed for remuneration solely by way of commission;"

There follows a definition of wages in § 20 (n) of the Act:

> " '*Wages*' means all remuneration for personal services, including commissions and bonuses and the cash value of all compensation in any medium other than cash. * * * Amounts paid to traveling salesmen or other individuals as allowance or reimbursement for traveling or other expenses incurred on the business of the employing unit shall be deemed to constitute wages only to the extent of the excess of such amounts over the expenses actually incurred

and accounted for by the individual to his employing unit; * * *"

Peoples admits that no accounting for automobile expenses is required, since the amount of the allowance is obviously less than the cost of operating a car. Its argument that the $10 payment should not bring the combination agents within the coverage of the Act is grounded on the circumstance that the U. S. Treasury Department and the District of Columbia have so ruled in interpreting a similar statute, D. C. Code (1962) Title 46 § 301, et seq., which considerations of uniformity should lead us to follow.

An examination of the cases leads inevitably to the conclusion that the uniformity of interpretation which Peoples urges is yet to be achieved. Virginia, Arizona and Illinois would hold those of Peoples' agents who receive minimum commissions or advance temporary commissions to be engaged in covered employment in the year in which such commissions are received. *Home Beneficial Life Ins. Co. v. Unemployment Compensation Comm'n*, 181 Va. 811, 27 S.E.2d 159 (1943); *Unemployment Compensation Comm'n of Virginia v. Union Life Ins. Co.*, 184 Va. 54, 34 S.E.2d 385 (1945); and *Washington Nat'l Ins. Co. v. Employment Security Comm'n,* 61 Ariz. 112, 144 P. 2d 688 (1944); *Commonwealth Life & Accident Ins. Co. v. Bd. of Review*, 414 Ill. 475, 111 N.E.2d 345 (1953).

Kentucky and perhaps Missouri would not. *Kentucky Unemployment Ins. Comm'n v. Western & Southern Life Ins. Co.*, 357 S.W.2d 850 (Ky. 1962); *American Nat'l Ins. Co. v. Keitel*, 353 Mo. 1107, 186 S.W.2d 447 (1945).

Not unexpectedly, the Virginia, Arizona, Illinois, Kentucky and Missouri Unemployment Compensation Acts [2] exempt from coverage insurance agents remunerated

2. Code of Virginia, Title 60 § 60.1-14(m) (1968); Arizona Revised Statutes § 23-617-15 (1956); 48 Illinois Annotated Statutes § 338 (1966); Kentucky Revised Statutes § 341.050 (6) (i) (1962); Annotated Missouri Statutes § 288.034 (6) (1) (1965).

solely by way of commission by language substantially similar to the language used in the Maryland Act. The reason for the similarity can be found in the history of the state unemployment compensation statutes. As originally enacted, most of them contained no provision excepting insurance agents from coverage.

The courts had generally rejected the contention that insurance agents were independent contractors, *Superior Life, Health & Accident Ins. Co. v. Bd. of Review*, 127 N.J.L. 537, 23 A. 2d 806 (1942) ; *Life & Casualty Ins. Co. v. Unemployment Compensation Comm'n*, 178 Va. 46, 16 S.E.2d 357 (1941) ; *Review Bd. of Unemployment Compensation v. Mammoth Life & Accident Ins. Co.*, 111 Ind. App. 660, 42 N.E.2d 379 (1942) ; Annotation, 137 A.L.R. 625 (1942), and by 1940, a few states had commenced to exclude them by statute. As a result, the 1939 amendment to Federal Unemployment Tax Act, § 1607 (c) (14) Internal Revenue Code of 1939, 26 U.S.C.A. § 1607 (c) (14), which became effective on 1 January 1940, contained the very language which now appears in § 20 (g) (7) (N) of the Maryland Act.

In explaining this amendment on the Senate floor, Senator Pat Harrison, then Chairman of the Senate Finance Committee, said :

> "Several States have exempted insurance salesmen from coverage, and your committee believes that it would be wise to exclude from the Federal unemployment compensation tax insurance salesmen whose sole pay is by way of commission. This would, of course, still leave the States free to cover this employment when they choose to do so, but it would eliminate the present situation, where the entire Federal tax, without any offset for State unemployment contributions, comes to the Federal Government where the State exempts this employment. The principal class of insurance salesman which would be affected is that class engaged in what

is generally called industrial insurance." 84
Cong. Rec. 8829 (1939).

Virginia amended its act in March, 1940; Arizona, Illinois, Kentucky, Missouri and Maryland, in 1941. All reflected the language of 26 U.S.C.A. § 1607 (c) (14), and Maryland adopted it precisely. The exemption remains unchanged in § 3306 (c) (14) of the Internal Revenue Code of 1954, 26 U.S.C.A. 3306 (c) (14), the present Federal Act.

The several cases heretofore cited all involved employment agreements remarkably similar to that used by Peoples. In *Home Beneficial Life Ins. Co.* and *Union Life Ins. Co.* the Virginia court held that an agent's total remuneration would be regarded as being derived from covered employment in any year in which a part of his compensation took the form of what Peoples described as a minimum commission. In *Washington Nat'l Ins. Co.*, Arizona held that an arrangement akin to Peoples' advance temporary commissions would bring the agent within covered employment. Illinois reached the same result in *Commonwealth Life & Accident Ins. Co.* On the other hand, *Western & Southern Life Ins. Co.* involved an agreement providing, much like Peoples' minimum commission, that if the regular commissions on premiums collected did not produce $40 per week, then the rate was to be adjusted so that commissions would total $40 per week. The Kentucky court flatly held that the remuneration was solely by way of commission. *American Nat'l Ins. Co.* dealt with a so-called "merit contract" which pyramided commissions as volume increased, and then projected the excess commissions over the next calendar quarter, paid to the agent in weekly installments, but only so long as he remained in the company's employ. The Missouri court rejected the contention that this was a fixed salary, and viewed the payments as deferred commissions. We hardly think that *American Nat'l Ins. Co.* is authority for the proposition that Missouri would regard an agent who received a stipulated sum, wholly un-

related to commissions, as being outside the area of covered employment.

Oddly enough, *Capital Life & Health Ins. Co. v. Bowers*, 186 F. 2d 943 (4th Cir. 1951) and *Gause-Ware Service Ins. Co. v. Thomas*, 76 F. Supp. 626 (D.N.D. Tex. 1946), both construing the Federal Act, reached results which appear to be diametrically opposite. *Gause-Ware Service Ins. Co.* held agents in the industrial field, compensated on a commission basis, to be exempt. *Capital Life & Health Ins. Co.*, ignoring the legislative history of the Federal Act, confined the exemption to those agents whose only function was the solicitation of applications for insurance and concluded that agents in the industrial insurance field, compensated solely on a commission basis, were engaged in covered employment.[3]

We incline toward the result reached in Virginia and Arizona (to which Illinois can be added), as Judge Manley did in the Superior Court of Baltimore City in *Near v. Maryland Employment Security Bd.* (Daily Record, 8 July 1955), which held that an agent paid an advance temporary commission was not compensated solely on a commission basis and was therefore covered by the Maryland Act.

Since we would hold that an agent is engaged in covered employment in any year in which any part of his compensation came in the form of minimum commissions or advance temporary commissions, we have no difficulty in concluding that the same result obtains in the case of the agent who receives the $10 weekly car allowance for which he need not account. To hold otherwise would be to flout the clear statutory mandate that excludes insurance agents whose remuneration is "solely by way of commission" and includes expense money in wages "to the extent of the excess of such amounts over the ex-

---

3. A careful examination of the opinion of the lower court in this case, 90 F. Supp. 600 (E.D.S.C. 1950) indicates that the same result might have been reached but possibly for a different reason: It may well have been that none of the agents involved was compensated solely on a commission basis.

penses actually incurred *and accounted for by the individual to his employing unit."*

We find unpersuasive Peoples' contention that the expense money is not regarded by the Internal Revenue Service as taxable income. There is ample authority for the proposition that revenue measures are construed differently from acts intended to implement social policy. *Worthington Constr. Co. v. Employment Security Division,* 413 P. 2d 929 (Alaska, 1966) ; *S.S. Kresge Co. v. United States,* 218 F. Supp. 240 (E.D. Mich. 1963) ; *Pacific American Fisheries, Inc. v. United States,* 138 F. 2d 464 (9th Cir. 1943) ; *California Employment Comm'n v. Black-Foxe Military Institute,* 43 Cal. App.2d 868, 110 P. 2d 729 (Super. Ct. 1941).

*Order affirmed, costs to be paid by appellant.*