356 F.Supp. 235 (1973)
The RELIABLE LIFE INSURANCE COMPANY, a corporation, Plaintiff,
v.
UNITED STATES of America, Defendant.
No. 71 C 573(2).
United States District Court, E. D. Missouri, E. D.
February 6, 1973.
*236 Walter M. Clark, Armstrong, Teasdale, Kramer & Vaughan, St. Louis, Mo., for plaintiff.
Michael C. Durney, Tax Div., Dept. of Justice, Washington, D. C., Daniel Bartlett, Jr., U. S. Atty., St. Louis, Mo., for defendant.

MEMORANDUM OPINION AND ORDER
REGAN, District Judge.
For construction in this suit for refund of federal unemployment taxes paid for the years 1962 through 1966 are Sections 3306(c)(14) and 3306(d), 26 U.S.C.
Section 3301, 26 U.S.C., imposes a tax on every employer for each calendar year "with respect to having individuals in his employ," the tax to be based on "the total wages (as defined in Section 3306(b)) paid by him during the calendar year with respect to employment (as defined in Section 3306(c))". The controversy arises out of the meaning and application of the term "employment" to the admitted facts. The basic facts are not in dispute and have been stipulated.
Plaintiff is a Missouri life insurance company subject to the Federal Unemployment Tax Act (FUTA). Returns were timely filed with the Internal Revenue Service (IRS). Thereafter, the IRS assessed tax deficiencies against plaintiff which, with interest, were paid. Timely claims for refund were filed and subsequently denied (except that as to the last year involved the IRS took no action on the claim), and this suit followed.
During the years in question, plaintiff operated a life insurance business on the "debit system" under which each of plaintiff's agents was assigned to a specific geographic area in which to sell and solicit insurance for plaintiff. Credit was given to each agent for any sales of insurance made to persons residing in his territory. An agent could not sell outside of his territory. Plaintiff also employed "staff managers," each of whom supervised a staff of 5 to 8 agents. One of the duties of a staff manager was to fill in for an agent if he was absent from work for any reason. *237 Staff managers were compensated by a combination of salary and commission.
In the years 1962 through 1965, some of plaintiff's newly employed agents began working for plaintiff on a combination of a guaranteed weekly salary and commission. The guaranteed minimum was for a period of 8 or 13 weeks and it was paid without regard to the agent's actual sales or collections. After the expiration of the probationary period the new agent (as all other agents) was compensated weekly on a commission basis only. In the year 1966, none of plaintiff's new agents was remunerated on a guaranteed basis, either in whole or in part.
In each of the years in question, a few experienced agents were promoted to the job of staff manager, and a much smaller number of staff managers were demoted to the status of agents. The employees so promoted or demoted were paid on a commission-only basis during that part of the year they served as agents and on a salary-plus commission basis while acting as staff managers.
Two types of commissions were paid to agents: (1) a "renewal" or "collection" commission which was a fixed percentage of the premium collected, and (2) a "writing" commission which was based on new business within the agent's debit area. In addition, each agent was required to maintain a "black reserve," representing the difference between total commissions earned by him and the amount of money he was actually paid on the weekly payroll. When the reserve reached a satisfactory level, agents were allowed to draw from the reserve. The purpose of the reserve was two-fold (a) it tended to equalize the agent's take-home pay throughout the year, and (b) it protected plaintiff against possible agent debit account shortages and deficiencies and from charge-backs for lost business properly chargeable against the agent under plaintiff's commission rules.
In December of three of the years, 1962, 1964 and 1965, plaintiff voluntarily issued Christmas checks to all of its employees including those whose compensation is here in issue. In 1962, each agent received a $125 Christmas check, while in 1964 and 1965 the amounts of the checks were based on the agent's years of service with the company. The checks ranged from $10 to $42 per agent for 1964 and from $10 to $82 for 1965. In no year were the Christmas checks promised in advance and in no year were the formulae for determining the amount thereof disclosed. In the applicable years, plaintiff deducted the aggregate of the Christmas checks from its gross income as a payroll expense.
Finally, in each of the years in question the agents were allowed vacation leave of from one to four weeks, the length of the vacation being determined by the number of years a particular agent had worked for plaintiff. During the time an agent was on vacation his accounts were handled for his benefit by his staff manager, with the result that the agent's commissions were continued as if he were at work. As noted, for each of the years in question plaintiff used exclusively a weekly payroll period for all agents, staff managers, and other employees.
Section 3306(b) defines the term "wages," as used in the Act, to mean all remuneration for "employment" (with certain exceptions not here involved). Remuneration paid to an employee for services which do not constitute employment does not constitute part of the tax base. The key word is "employment." That term is defined in Section 3306(c) to mean, for purposes of the Act, any services of whatever nature performed by an employee for the person employing him, with 17 enumerated exceptions, including the following exception set forth in sub-paragraph 14:
"Service performed by an individual for a person as an insurance agent or as an insurance solicitor, if all such service performed by such individual for such person is performed for remuneration solely by way of commission."
*238 It is the position of plaintiff that in computing its FUTA liability for each calendar year, the question of whether the service performed by a particular employee constituted "employment" must be separately determined for each pay period, and that if the service performed in any pay period does not constitute "employment," then all "wages" paid for such services in that pay period must be excluded in computing the tax for a calendar year. On the other hand, the deficiency assessments made by the IRS were premised on the theory that if during any pay period in a calendar year an employee performing services as an insurance agent received any compensation whatsoever for his services other than by way of commission, then all compensation paid to that employee for the entire calendar year is subject to the applicable FUTA taxes, even though in all other pay periods of that year the employee was compensated solely by way of commission for all services rendered by him as an insurance agent.[1]
Section 3306(d), in our judgment, clearly evidences the Congressional intent that for purposes of the FUTA a determination of whether the services of any employee are deemed to be "employment" must be made for each pay period of that employee. This section provides that "(f)or purposes of this chapter, if the services performed during one-half or more of any pay period by an employee for the person employing him constitute employment, all the services of such employee for such period shall be deemed to be employment; but if the services performed during more than one-half of any such pay period by an employee for the person employing him do not constitute employment, then none of the services of such employee for such period shall be deemed to be employment * * *. This subsection shall not be applicable with respect to services performed in a pay period by an employee for the person employing him, where any of such service is excepted by subsection (c)(9)."[2]
True, neither Section 3306(d) nor any other section of the Act specifically provides that the "total wages" paid to an employee during a calendar year "with respect to employment" is the sum of wages paid for "employment" in each pay period. However, the basic premise of Section 3306(d) is that the relevant facts must be ascertained pay period by pay period. On that premise, the evident purpose of the subsection is simply to make provision for those cases in which part of the services performed by an employee during a particular pay period constitute "employment" and part do not under any of the exceptions listed in subsection (c).
The Government stresses the fact that the tax imposed under Section 3301 is for a calendar year and is based on the "total wages" paid during the calendar year with respect to "employment." However, Section 3301 applies to every employer and not merely to employers of insurance agents, so that if Section 3301 were held to mandate a calendar year approach Section 3306(d) would become meaningless at best. Yet the Government concedes that the pay period governs as to all employees other than insurance agents in ascertaining whether their services constitute "employment."
The Government contends that the requirement in Section 3306(c)(14) that all an insurance agent's service as such must be performed for remuneration "solely by way of commission" differentiates the insurance agent exception *239 from all other exceptions. We do not agree. The fact that all the services as an insurance agent must be so remunerated in order to make the exception applicable does not answer the question of whether the phrase "all such service" refers to all such service performed during a particular pay period of the agent or to all such service performed by him during the entire calendar year.
We decline to interpolate into subsection (c)(14), after the words "all such service," the additional words "during the calendar year." The construction of Section 3306(c)(14) contended for by the Government is unreasonable, and we can discern no purpose to be served by such unreasonable construction. We believe that Section 3301 should be applied uniformly as to all categories of employees in making a determination of their "total wages * * * with respect to employment."
We hold, therefore, that if the service performed by any employee during any pay period does not constitute employment by reason of any exception contained in Section 3306(c), then the wages paid by the employer for such service are necessarily eliminated from the tax base. The "total wages" paid to an employee "with respect to employment" is the sum of the "wages" paid to such employee in each pay period. It follows that as to each employee who performed service as an insurance agent during any pay period, the determination of whether that employee was remunerated solely by way of commission for all service as an insurance agent must be separately ascertained for each pay period of the calendar year. If the service performed by the agent in any particular pay period during that calendar year does not constitute "employment," then the remuneration paid for that service does not constitute part of the "total wages" upon which the tax is computed.
The remaining questions are whether the commissions paid to agents during their vacations and for sales of policies not personally made by them should be differentiated from other "commissions" and whether the payment of Christmas bonuses affects the employer's liability for the FUTA tax.
The word "commission" is nowhere defined in the Act. In the context in which it is used, and in the ordinary understanding of the word, "commission" means compensation based on a percentage of an amount collected, received or agreed to be paid for results accomplished, as distinguished from "salary" which is a fixed and periodical amount payable without regard to actual results achieved.
Obviously, during a vacation period an insurance agent does not personally perform any service. However, as the Supreme Court pointed out in Social Security Board v. Nierotko, 327 U.S. 358, 66 S.Ct. 637, 90 L.Ed. 718, the term "service performed" means not only work actually done but the entire employer-employee relationship for which compensation is paid to the employee by the employer. Even though the service required of the agent during his vacation is actually performed by a staff manager, the measure used to determine the amount of his compensation is no different than when the agent personally performs the service. The remuneration is still based on a percentage of the amount collected, received or agreed to be paid for insurance. In common understanding, such remuneration would be considered commission. In our judgment the fact that the staff manager acts in the agent's stead and on his behalf in performing the service does not change the inherent nature of the compensation paid to the agent as being commission for service as an insurance agent. The very reason an agent is assigned an exclusive territory is to enable him to make that territory productive. All business done in that territory may reasonably be said to result from the *240 agent's efforts. The same considerations are applicable to the commissions paid for business not personally written or solicited by the agent.
As for the Christmas bonuses paid by plaintiff they do not fit the classic definitions of either "commission" or "salary." Clearly, they do not constitute salary since they were not a contractual or even a moral obligation of plaintiff. On the contrary, the bonuses were paid voluntarily in some of the years in question on formulae which were not disclosed to any employee, for the purpose of expressing the employer's gratitude or appreciation to its employees for a successful year.
Although for income tax purposes the bonuses were treated as part of the employer's payroll expense, we do not believe that the nature of such gratuitous payments may be equated with "remuneration" for service performed within the meaning of subsection (c)(14). Comparable "gifts" of merchandise are not considered "remuneration" by the IRS. These payments were directly connected with and resulted from the combined efforts of the agents who were remunerated solely by way of commission, in that such joint efforts produced the volume of business which justified the payments. The "dominant reason" for making the payments at year-end was simply to foster and maintain a climate of good will, so that the agents would be more likely to increase their commission-remunerated production in the coming year. We have concluded that even as to those payroll periods in which Christmas "bonuses" were distributed, the insurance agents who were the recipients of such payments were remunerated for their services "solely by way of commission."
The foregoing constitutes our findings of fact and conclusions of law. The parties are directed to prepare a form of judgment in conformity herewith.
NOTES
[1] By way of example, the Government contends that the voluntary payment of a $10 Christmas bonus to an insurance agent otherwise remunerated solely by way of commission converts his entire compensation for the year into taxable wages.
[2] "(9) service performed by an individual as an employee or employee representative as defined in section 1 of the Railroad Unemployment Insurance Act (52 Stat. 1094, 1095; 45 U.S.C. 351)."