Melton M. GORDON, Petitioner,

v.

DISTRICT UNEMPLOYMENT COM-
PENSATION BOARD, Respondent.

No. 13012.

District of Columbia Court of Appeals.

Argued June 8, 1978.

Decided June 12, 1979.

Burton Yavener, Silver Spring, Md., for petitioner.

Russell L. Carter, Bill L. Smith and Earl S. Vass, Jr., Washington, D. C., were on the brief for petitioner, which was submitted without oral argument. D. Kevin Dugan, Washington, D. C., also entered an appearance.

Before NEWMAN, Chief Judge, and KELLY and GALLAGHER, Associate Judges.

GALLAGHER, Associate Judge:

Petitioner appeals a decision by the District Unemployment Compensation Board (D.U.C.B.) denying unemployment benefits on the ground that he was not "paid wages for employment" within the meaning of the District of Columbia Unemployment Compensation Act, D.C.Code 1973, §§ 46–301 et seq.[1] The sole question on appeal is whether petitioner, a "debit agent" for Provident Indemnity Life Insurance Company (Provident), is covered by D.C.Code 1973, § 46–301(b)(5)(L), which provides:

(5) The term employment shall not include—

\*  \*  \*  \*  \*  \*

(L) service performed by an individual for a person as an insurance agent or

---

1. Remuneration which is not "wages for employment" is eliminated from the claimant's "base period wages," when computing unemployment benefits. See D.C.Code 1973, § 46–307. If petitioner had received the additional wage credits, to which he claims entitlement, his weekly unemployment benefits would have been $148 for 34 weeks instead of the $127 he received for 21 weeks.

as an insurance solicitor, if all such service performed by such individual for such person is performed for remuneration solely by way of commission. We remand to the Board for further proceedings.

After responding to a newspaper advertisement for "Insurance Debit Sales," in April 1974, petitioner was hired and assigned to the District of Columbia territory as an exclusive agent for Provident, a Pennsylvania corporation. His duties, as specified by contract, were collection of premiums[2] and servicing insurance policies (e. g., following up on premium collections and lapsed policies, maintaining records, notifying insured of potential lapses), from a list of policies provided by the company. The contract also required that he "devote his entire time and efforts . . . to solicit applications for life and health insurance." Although he had no set hours of work, petitioner was expected to report to the office once a week to turn in collections and file reports. Agents also were required, by office rule, to phone in daily for telephone messages. Provident supplied petitioner with a desk, telephone and office supplies at the Maryland district office, but he furnished his own means of transportation.

Petitioner testified at the hearing before the Appeals Examiner that 90% of his earnings came from collection of premiums and servicing the policies. His weekly pay was based on a percentage formula, averaging the prior four-week total collections and sales. The record is unclear on the method of calculation, particularly because a new contract went into effect in June 1976, less than two months before petitioner terminated his employment. Apparently, the new contract established various commission pools (collections, sales, persistency bonus) to which the agent's total activity was credited. At the time of payment, the agent received amounts based on a percentage of the balance in each pool.

In addition, the company provided an expense allowance, 3% of collections under the old contract, and a flat $10.50 under the new contract. The weekly earnings (including expense allowance) were paid by company check or cash, after deductions for District of Columbia and federal taxes (income and social security).[3] Fringe benefits included a two-week paid vacation (time off with pay), membership in the company group life, accident and hospitalization insurance plan, and an invitation to participate in the pension plan.

At the hearing, petitioner asserted that the employer's deposition in Pennsylvania denied him the opportunity to confront and cross-examine witnesses. As the Examiner stated, "serious consideration [was] given the request [to confront and cross-examine] and it would have been granted had the case turned on questions of fact. However, it does not turn on fact questions but rather, on an interpretation of the statute." Because of the objection, however, the Examiner disregarded the employer's evidence.

Based on petitioner's version of the facts, the Appeals Examiner concluded that "claimant's services as a debit agent were services excluded from covered employment by Section 1(b)(5)(L) of the Act." In the Examiner's view, debit agents fall within the scope of the insurance agent/solicitor exception as a matter of law, if remunerated solely by commission. The Examiner found the element of "remuneration solely by commission" present, defining a commission as "a percentage of the money received in a transaction paid to the agent responsible for the business." The decision of the Appeals Examiner was affirmed by the D.U.C.B. on December 21, 1977.

---

**2.** In the insurance industry, the weekly and monthly premiums payable by policyholders are referred to as "debits".

**3.** Petitioner maintains that Provident also remitted unemployment compensation insurance taxes to the District of Columbia. However, the confusion results from petitioner's uncontested status as an employee of Provident through the end of 1975. During the period from 1974 to the fourth quarter of 1975, he received a minimum salary for debit collection. Apparently, it is industry practice to pay a guaranteed minimum salary to new agents during their apprenticeship.

## I.

▮ The scope of our review here "is limited to questions of law and . . . to a determination of whether or not the findings of the compensation authorities are supported by competent evidence." *Green v. District Unemployment Compensation Board,* D.C.App., 346 A.2d 252, 255 (1975), quoting *Coulter v. Commonwealth Unemployment Compensation Board of Review,* 16 Pa.Cmwlth. 462, 332 A.2d 876 (1975); *see* D.C.Code 1973, § 1–1510.

▮ Where "the [agency] action is based upon a determination of law as to which the reviewing authority of the courts does come into play, an order may not stand if the agency has misconceived the law." *SEC v. Chenery Corporation,* 318 U.S. 80, 94, 63 S.Ct. 454, 462, 87 L.Ed. 626 (1943). As a matter of statutory interpretation, therefore, we must determine (1) whether petitioner was an insurance agent or solicitor during the relevant quarters of 1976, within the meaning of the exemption, and (2) whether he was remunerated solely by commission.

Although a novel question in this jurisdiction, the insurance agent exemption has been discussed in federal and state judicial decisions.[4] The District of Columbia, like several other jurisdictions, adopted the statutory exclusion for insurance agents from the Federal Unemployment Tax Act. *See* 26 U.S.C.A. § 3306(c)(14) (1979). The section, added by a 1939 amendment to the Federal Unemployment Tax Act, Internal Revenue Code of 1939, 26 U.S.C.A. § 1607(c)(14), "was studiedly so written into the amended District Unemployment Compensation Act for purposes of conformity and coordination." Opinion of the Corporation Counsel, No. 166, Oct. 14, 1943.

The legislative history of the federal provision is sparse.[5] The exemption was included by the Senate to insure uniform state and federal treatment of insurance agents. As explained on the Senate floor by the Finance Committee Chairman:

> Several states have exempted insurance salesmen from coverage and your committee believes that it would be wise to exclude from the Federal Unemployment Compensation Tax Insurance salesmen whose sole pay is by way of commission. This would, of course, still leave the states free to cover this employment when they choose to do so, but it would eliminate the present situation, where the entire Federal tax, without any offset for State unemployment contributions comes to the Federal Government where the State exempts their employment. The principal class of insurance salesman which would be affected is that class engaged in what is generally called industrial insurance. [84 Cong.Rec. 8829 (1939).]

▮ Petitioner contends on appeal that he is not an insurance agent or solicitor within the meaning of the statutory exemption. He argues that the section excludes from coverage those insurance agents representing several companies who are essentially independent contractors, not those, like himself, who are tied to one company.

---

4. *See, e. g., Capital Life & Health Ins. Co. v. Bowers,* 186 F.2d 943 (4th Cir. 1951); *Reliable Life Ins. Co. v. United States,* 356 F.Supp. 235 (E.D.Mo.1973); *M. F. A. Mutual Ins. Co. v. United States,* 314 F.Supp. 590 (W.D.Mo.1970); *Washington Nat'l Ins. Co. v. Employment Security Comm'n,* 61 Ariz. 112, 144 P.2d 688 (1944); *Commonwealth Life & Accident Ins. Co. v. Board of Review,* 414 Ill. 475, 111 N.E.2d 345 (1953); *Kentucky Unemployment Ins. Comm'n v. Western & Southern Life Ins. Co.,* 357 S.W.2d 850 (Ky.1962); *Peoples Life Ins. Co. v. Maryland Dep't of Employment Security,* 256 Md. 350, 260 A.2d 287 (1970); *Unemployment Compensation Comm'n v. Union Life Ins. Co.,* 184 Va. 54, 34 S.E.2d 385 (1945); *Home*

*Beneficial Life Ins. Co. v. Unemployment Compensation Comm'n,* 181 Va. 811, 27 S.E.2d 159 (1943).

5. The Senate Report explains only that the provision

eliminates from coverage insurance agents and solicitors if the remuneration for which they perform their services is on a commission basis solely. If any part of such remuneration is a fixed salary the agent or solicitor is covered and the tax is computed on the basis of his aggregate remuneration (for example, salary or salary plus commission). [S.Rep.No.734, 76th Cong., 1st Sess. 589 (1939).]

Petitioner's contention finds support in an early case interpreting the federal exclusion, *Capital Life & Health Insurance Co. v. Bowers*, 186 F.2d 943 (4th Cir. 1951).[6] In *Capital*, the Fourth Circuit held that agents hired primarily to collect weekly premiums on a commission basis were employees, and did not come within the Federal Unemployment Tax exemption for insurance agents and solicitors. The court stated:

> The insurance agent or solicitor contemplated by this exception is one who is engaged primarily in the sale of insurance to new policy holders and does not collect insurance premiums which are paid by the policy holders directly to the company. Such an agent usually has a wide and unrestricted area of permissible activity, is possessed of knowledge of a considerable variety of insurance contracts and is qualified to advise prospective policy holders as to the kind of policies best suited to their needs. He is primarily a policy writing agent and not a collector of premiums. The contrast is marked between his work and that of the commission agent who, as in this case, is given a prepared debit to collect, is paid only by commissions on collections, and is limited to the sale of three kinds of policies . . . which must be issued in accordance with precise company instructions. [*Capital Life & Health Insurance Co. v. Bowers, supra* at 946.]

The Appeals Examiner, however, correctly rejected such a narrow interpretation of the section, concluding "The doctrine of the *Capitol [sic]* case is not the prevailing or controlling law on this subject." The *Capital* case does in fact appear to be a minority view. Other federal and state courts have specifically refused to construe the exemption so narrowly. *See, e. g., Commonwealth Life & Accident Insurance Co. v. Board of Review*, 414 Ill. 475, 111 N.E.2d 345, 348–49 (1953); *Home Beneficial Life Insurance Co. v. Unemployment Compensation Commission*, 181 Va. 811, 27 S.E.2d 159 (1943); *see also* Rev.Rul. 176, 1958–CB 1858. In *Home Beneficial Life Insurance Co., supra*, for example, the Supreme Court of Virginia concluded that the term "insurance agent" as used in the Virginia exclusion, identical to the District's, included both insurance solicitors and insurance collectors. Consequently, the court reversed as too narrow an agency determination that the exemption was not broad enough to reach an insurance agent whose principal duty was collection of premiums, stating

> [i]f it had been the intent of the draftsman of the Act to exclude the service of only "an insurance solicitor," why the necessity of adding that of the broader class, "an insurance agent"? Since both classes are found in the statute we must conclude that both were intended to be given effect and were intended to be excluded. [27 S.E.2d at 162.] [7]

The applicability of the exemption to debit or combination debit agents has been assumed in recent cases, with the controversy focusing on whether the agent is an employee and, if so, whether he is compensated solely by commission. *See, e. g., Reliable Life Insurance Co. v. United States*, 356

---

6. In addition, two principles of statutory construction militate for a narrow interpretation of the exemption: (1) liberal construction of a public welfare statute to effectuate its purpose. The purpose of unemployment compensation is protection of employees against economic dependency caused by unemployment so as to reduce burden on other welfare programs. *See Von Stauffenberg v. D. U. C. B.*, D.C.App., 269 A.2d 110 (1970); and (2) strict construction of exemption from taxation, compulsory unemployment contributions by the employer constituting taxes. *See National Rifle Ass'n of America v. Young*, 77 U.S.App.D.C. 290, 134 F.2d 524 (1943).

7. An insurance agent, so far as the insurer is concerned, is a person authorized to act as its representative in dealing with third persons. This agency can be of various kinds, including general, special, local, resident, soliciting and collecting. *See generally* Annot., 39 A.L.R.3d 872, 874 n.2 (1971).

Although "insurance agent" and "solicitor" are not defined for District of Columbia unemployment compensation purposes, the insurance company regulatory provisions contain a definition. *See* D.C.Code 1973, § 35–302. In § 35–302, the D.C.Code defines "agent" as one authorized in writing by a company to solicit risks and collect premiums in its behalf.

F.Supp. 235 (E.D.Mo.1973); *M.F.A. Mutual Insurance Co. v. United States*, 314 F.Supp. 590 (W.D.Mo.1970); *see also Peoples Life Insurance Co. v. Maryland Department of Employment Security*, 256 Md. 350, 260 A.2d 287 (1970).

■ The insurance agent's status as an "employee" is, of course, a prerequisite to coverage under the District of Columbia Act.[8] Under D.C.Code 1973, § 46–301(b)(1), "employment" means

(A) . . . service performed after December 31, 1971, including service in interstate commerce, by—

\* \* \* \* \* \*

(ii) any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee[.]

Thus, the employee-independent contractor distinction is necessarily taken into consideration at the threshold. The insurance agent exemption will, therefore, exclude from coverage persons who would otherwise be deemed employees. For this reason, petitioner's argument that the exemption applies only to independent contractors must fail.

As the Supreme Court has stated, "[t]he problem of differentiating between [an] employee and an independent contractor or between an agent and an independent contractor has given difficulty through the years before social legislation multiplied its importance." *United States v. Silk*, 331 U.S. 704, 713, 67 S.Ct. 1463, 1468, 91 L.Ed. 1757 (1947), quoted in *M.F.A. Mutual Insurance Co., supra* at 596. Each case must stand or fall on the incidents of the particular relationship between the insurer and the insurance agent or salesman.[9] *N.L.R.B. v. United Insurance Co.*, 390 U.S. 254, 258–59, 88 S.Ct. 988, 19 L.Ed.2d 1083 (1968). There will necessarily be gradations or hybrid forms. For this reason, we cannot agree with the Appeals Examiner that this case involves only questions of law. It is not clear from the record to what extent the evidence is in conflict on this point. The employer's evidence should be considered, however, since the company's interest is adverse to that of the claimant.[10]

II.

■ If petitioner is deemed an employee, the question remains, whether he was compensated solely by commission as required by the exemption. Specifically, a question arises as to whether the fringe benefits and expense allowance provided petitioner constitute remuneration not solely in the form of commission.

The legislative history of the 1939 FUTA amendment indicates that the Senate

8. The federal act, 26 U.S.C.A. § 3306(c)(14) (1979), provides:

(c) *Employment.*—For purposes of this chapter, the term "employment" means . . . any service, of whatever nature, performed . . . by an employee for the person employing him . . . except . . .

\* \* \* \* \* \*

(14) Service performed by an individual for a person as an insurance agent or as an insurance solicitor, if all such service performed by such individual for such person is performed for remuneration solely by way of commission; . . .

9. *See, e. g., M.F.A. Mutual Ins. Co., supra* (insurer's financed agents were "employees" for federal employment tax purposes, rather than "independent contractors," where insurer exercised considerable control over details of work); *Zipser v. Ewing*, 197 F.2d 728 (2d Cir. 1952) (life insurance agent, who worked his own hours at his own expense, who had no designated territory and who was required to contact no particular prospects was an independent contractor); *Garrison v. California Employment Stabilization Comm'n*, 64 Cal. App.2d 820, 149 P.2d 711 (1944) (insurance agent who maintained own office paid own expenses, was compensated solely by commission, controlled his own time, was agent for several different companies, and who sold different forms of insurance, *was independent contractor*; agent who worked for one company only, the company furnishing his office, paying all costs of its operation, controlling his time in its entirety, with the right to direct the manner of his performance and to discharge for cause, was an employee).

10. We note that for purposes of Social Security (FICA) and income tax withholding, petitioner was treated as an employee. Neither exempts insurance agents, as does the unemployment compensation act.

sought to exempt those agents who performed services on a commission basis, in contrast to salaried employees. See note 5, *supra*. The word "commission" is nowhere defined in the federal or District of Columbia Act. However, courts have generally taken a practical approach.[11] As the District of Columbia Corporation Counsel reasoned:

> In enacting Section [(b)(5)(L)], Congress must have had a definite meaning for the word "commission" and it is believed that it should be construed as it is commonly used in this business. As commonly used in this business, it would mean remuneration based upon a specific sale or collection. [Opinion of Corporation Counsel, No. 181, July 27, 1948.]

In *Reliable Life Insurance Co. v. United States, supra* at 239, the court defined "commission" "in the ordinary [sense] of the word" as "compensation based on a percentage of an amount collected, received or agreed to be paid for results accomplished, as distinguished from 'salary' which is a fixed and periodical amount payable without regard to actual results achieved."

Although we have not had occasion to consider the issue, several courts have wrestled with the problem of distinguishing commissions from salary. A close question is often presented where the insurance company, by means of contractual arrangements, affects the flow of income to the agent. Generally, courts have strictly construed the term "commission," finding the exemption inapplicable to various schemes intended to provide the agent with an earnings floor or to equalize payments over the year, particularly those schemes which provide advance payments.[12] In *Washington National Insurance Co. v. Employment Security Comm'n*, 61 Ariz. 112, 144 P.2d 688 (1944), under an exemption worded like the District's, the court held an insurance company liable for state unemployment tax contributions on remuneration paid debit agents, where many factors besides commission entered into the pay determination. Specifically, the remuneration which was not "solely by way of commission" involved a minimum amount advanced per week against a reserve built up on the basis of a formula, plus a lump sum yearly bonus. 144 P.2d at 694.

Another problem of interpretation is presented where the insurer provides fringe benefits or compensation for certain types of expenses. Christmas bonuses and vacations with pay were held in *Reliable Life Insurance Co., supra*, not to affect the employer's liability for FUTA tax, that is, did not bring a commission basis agent under the Act's coverage. The compensation during vacation periods was still based on a percentage of the amount collected, received or agreed to be paid for insurance in the agent's exclusive territory, although the staff manager acted in the agent's stead. The Christmas bonus, in the court's view, did not constitute either salary or commission since it was a voluntary payment to express the employer's gratitude. In a Maryland case, however, receipt of a $10 weekly car allowance for which the agent did not have to account was compensation by other than commission, bringing the agent within coverage of the Act. *Peoples Life, supra.* To hold otherwise, the court noted, would be to flout the clear statutory

11. *See, e. g., American Nat'l Ins. Co. v. Keitel,* 353 Mo. 1107, 186 S.W.2d 447, 449 (1945); *Commonwealth Life & Accident Ins. Co., supra,* 111 N.E.2d at 350.

12. *Compare Peoples Life Ins. Co., supra,* 260 A.2d at 291 (remuneration not solely on commission basis where agent paid an advance temporary commission), citing *Near v. Maryland Employment Security Bd.,* 9 Daily Record, July 8, 1955), *and Commonwealth Life & Accident Ins. Co., supra* at 111 N.E.2d 349–50 (payment of fixed sums, without regard to insurance sold, chargeable against personal earnings of the individual agent was not compensation by commission), *with Kentucky Unemployment Ins. Comm'n v. Western & Southern Life Ins. Co.,* 357 S.W.2d 850 (Ky.1962) (remuneration solely by commission in spite of agreement to adjust rate if commissions on premiums collected did not reach $40 per week), and *American Nat'l Ins. Co. v. Keitel, supra* (held to be deferred commissions rather than salary where commissions pyramided as volume increased, and excess commissions were projected into next calendar quarter and paid to agent in weekly installments).

mandate including expense money in the definition of wages to the extent of the excess over expenses actually incurred. 260 A.2d at 291.

Vacation with pay is included in the District of Columbia definition of wages, while group insurance plans and allowances which meet expenses are excluded. *See* 18 DCRR § 203.1; D.C.Code 1973, § 46–301(c). Since "wages" include all forms of compensation (*i. e.*, salary, commission, tips, bonuses) paid for services performed under an employment contract, then necessarily expense allowances to the extent of reimbursement[13] and group insurance benefits are not considered compensation. Thus, neither of these categories interferes with the requirement of remuneration by commission.

The record here is devoid of specific findings. It is not clear whether petitioner's vacation pay was calculated on a commission or flat salary basis. In addition, the record lacks testimony regarding petitioner's means of payment under both contracts. While petitioner testified that he received a straight percentage under the old contract, the new contract instituted a complicated formula. Clearly, the formula for calculating weekly payments is critical to a determination of whether remuneration was by way of commission.

Generally, "the Board's findings and conclusions are conclusive upon this court if supported by evidence in the whole of the administrative record." *Washington Post Co. v. District Unemployment Compensation Board*, D.C.App., 379 A.2d 694, 696 (1977); *Hill v. District Unemployment Board*, D.C.App., 302 A.2d 226, 228 (1973). Administrative decisions will not be reversed solely because we might have reached a different conclusion. However, "the orderly functioning of the process of review requires that the grounds upon which the administrative agency acted be clearly disclosed and adequately sustained." *SEC v. Chenery, supra*, 318 U.S. at 94, 63 S.Ct. at 462. Because unemployment insur-

ance coverage involves mixed questions of fact and law, we remand this case for a new hearing and determination of law.

*Remanded for further proceedings consistent with this opinion.*

---

**13.** Under the old contract, agents received a 3% expense allowance so no problem would be raised in meeting the solely by commission standard. However, the new contract, providing a flat amount, may result in a salary payment to the extent it exceeds actual expenses.