Melton M. GORDON, Petitioner,

v.

**DISTRICT OF COLUMBIA UNEMPLOY-MENT COMPENSATION BOARD, Respondent.**

No. 81–82.

District of Columbia Court of Appeals.

Argued Nov. 24, 1981.

Decided Dec. 30, 1981.*

Memorandum Opinion and Judgment.

* The original disposition of this case was by

Burton Yavener, Silver Spring, Md., for petitioner.

Michael A. Milwee, Washington, D. C., for respondent.

Before NEWMAN, Chief Judge, NEBEKER, Associate Judge, and YEAGLEY, Associate Judge, Retired.

NEBEKER, Associate Judge:

On December 21, 1977, the District Unemployment Compensation Board (subsequently renamed the District of Columbia Department of Employment Services) entered a decision which denied Melton M. Gordon unemployment benefits on the ground he was not "paid wages for employment" within the meaning of the District of Columbia Unemployment Compensation Act. D.C.Code 1973, § 46–301 *et seq.*[1] The Board held that Gordon's services as a "debit agent" for Provident Indemnity Life Insurance Company (Provident) fell within the Section (b)(5)(L)[2] exception to the Act which provides that the term employment shall not include:

> (L) service performed by an individual for a person as an insurance agent or as an insurance solicitor, if all such service performed by such individual for such person is performed for remuneration solely by way of commission.

Gordon sought review of the Board's decision and this court, noting that the record was devoid of specific findings, remanded the case for a new hearing and determination of law. *Gordon v. District Unemployment Compensation Board*, D.C.App., 402 A.2d 1251 (1979). A hearing *de novo* was held on November 28, 1979, with both parties represented, and on February 11, 1980, the Appeals Examiner issued his Findings of Fact and Conclusions of Law. Following exhaustion of his administrative remedies, which upheld the Appeals Examiner's decision, Gordon brought this second petition for review. Having reviewed the Examiner's findings and after oral argument from both parties, we affirm.

In its earlier examination of the case, this court noted that Section (b)(5)(L) excludes those agents who perform services on a commission basis, in contrast to salaried employees. However, the court observed that the term "commission" is nowhere defined in the Act or in prior decisions by this court. The court stated:

> Although we have not had occasion to consider the issue, several courts have wrestled with the problem of distinguishing commissions from salary. A close question is often presented where the insurance company, by means of contractual arrangements, affects the flow of income to the agent. Generally, courts have strictly construed the term "commission," finding the exemption inapplicable to various schemes intended to provide the agent with an earnings floor or to equalize payments over the year, particularly those schemes which provide advance payments. [*Id.* at 1257.]

Because the Examiner made no specific finding, the court was concerned as to whether Gordon was remunerated "solely by commission," or whether other factors entered into his pay determination to create an "earnings floor" or "equalized payments." The court also questioned whether Gordon's fringe benefits and his expense allowance would qualify him for unemploy-

---

1. Subsequently redesignated D.C.Code 1981, § 46–101 *et seq.*

2. D.C.Code 1981, § 46–101(2)(E)(xi).

ment benefits. The court observed that vacation pay calculated according to that received by salaried employees and expense allowances which exceed expenses could bring insurance agents within coverage of the Act. *Id.* Noting that social security, group insurance plans, and allowances which merely meet expenses are excluded from the District of Columbia definition of wages, 18 DCRR 203.1; D.C.Code 1973, § 46–301(c),[3] the court remanded the case for a determination of (1) whether the formulae used for calculating Gordon's weekly payments constituted remuneration by way of commission,[4] (2) whether Gordon's vacation pay was calculated on a commission or flat salary basis, and (3) whether Gordon's expense allowance exceeded the expenses he actually incurred. The Appeals Examiner issued the following findings.

1. Vacation Pay. The compensation which the claimant received during any week he was on vacation was merely that amount of commissions to which he was otherwise entitled and which would have been paid to him had he been working. Such commissions were earned during the preceding accounting period.

2. Expense Allowance. The claimant was paid a 3% collection expense allowance from 1/1/76 to 5/16/76 which was equal to 3% of the amount of the premiums which he remitted during the applicable accounting period. However, from 5/17/76 to 8/6/76 he was paid $10.50 a week for an allowance for expenses. This sum did not exceed the actual expenses incurred by the claimant as a debit agent from the company. He spent an average of $15.66 per week for transportation expenses alone and his total expenses were at least twice the amount of his expense allowance.

3. Commissions Under New Contract. The formula for calculating the compensation payable to the claimant under both

the new and old contracts was based solely on commissions. The commissions were calculated as a percent of the productivity of the claimant in collecting premiums, preserving the business and selling insurance policies. During the period under consideration neither contract provided for any payment in the nature of an advance, a "floor" or salary.

4. Fringe Benefits. The claimant was covered under the company's group life and health insurance coverage at its expense. However, group insurance benefits are not considered compensation and thus does not interfere with requirement of remuneration by commission. It should be noted that claimant paid for the cost of his wife's coverage. The firm did pay for the claimant's license as an insurance solicitor and did provide office space, use of telephone, and stationery at its District office. The company also provided workmen's compensation coverage for the claimant and paid social security tax applicable to the claimant.

The scope of our review here "is limited to questions of law and ... to a determination of whether or not the findings of the compensation authorities are supported by competent evidence." *Id.* at 1254; *Washington Post Co. v. District Unemployment Compensation Board,* D.C.App., 379 A.2d 694, 696 (1977). *See* D.C.Code 1981, § 1–1510. The evidence adduced at the hearing included Gordon's employment contract as well as testimony from a Provident vice president who stated that Gordon's compensation under both employment contracts, *supra,* note 4, consisted of commissions based upon a percentage of his sales and the premiums he collected. The vice president also testified that Gordon's vacation pay was based on a commission calculated on the previous month's collections. The question of compensation was somewhat complicated by the fact that Provident's second employment agreement with Gordon

---

3. D.C.Code 1981, § 46–101(3).

4. Three weeks prior to the time Gordon terminated his employ, Provident changed the method it used in compensating its agents. The first method based Gordon's pay on the averaging of the prior four-week total collections and

sales. The later method consisted of various "commission pools" (collections, sales, etc.) to which the agent's total activity was credited and he received payments based on a percentage of the balance of each pool.

changed his expense allowance from three percent of his commission to $10.50 per week. However, the evidence adduced demonstrated that Gordon's weekly expense exceeded his allowance by $5.16.

Our examination of the record shows that there was competent evidence to support the Examiner's finding that Gordon's vacation pay was funded by commissions, his weekly expense allowance did not exceed his expenses, and that both employment contracts paid Gordon straight commissions for selling insurance policies and collecting premiums. Any additional fringe benefits or office space and supplies Gordon received did not constitute payment of a salary.[5]

Accordingly, the order on review is

*Affirmed.*

---

**5.** The first issue raised by Gordon concerned whether he was an employee of Provident rather than an "independent contractor." However, this court addressed that issue on Gordon's first appeal and held that he was an employee but that his status was not controlling on the applicability of the exemption because this section of the Act necessarily presupposes an employer/employee relationship. *Gordon, supra* at 1256.